## No. 26490

### The People of the State of Colorado v. Amador Borjas

(552 P.2d 26)

Decided July 6, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, James S. Russell, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee J. Belstock, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

Defendant, Amador Borjas, was convicted by a jury of second-degree assault. He asserts several grounds for reversal and a new trial. We find them without merit and affirm.

At the trial, it was shown that both defendant and the victim, Abdon Lucero, were leaving a local eatery, following a fight in which defendant had not participated. Defendant had entered an automobile with several friends, intending to leave for home, when Lucero approached the automobile and confronted defendant, who then got out of the vehicle.

As the two parties drew near to each other, a shot was fired in the area. Lucero fell, and defendant began kicking him and beating him with his belt. One of defendant's friends made several attempts to stop the beating. When the defendant had ceased assaulting and pummeling Lucero and had left the scene, Lucero was taken to a nearby hospital. It was there discovered he had been fatally wounded by a gunshot which had preceded the beating. The investigation of the scene revealed an automatic pistol which may have been in the victim's possession during the fracas. The testimony was conflicting as to whether the pistol was in Lucero's hand.

The defendant claimed self-defense, stating that he had merely reacted in fear; that he thought that Lucero had fired a gun at him, also claiming that Lucero was maliciously grabbing at him.

Defendant bases his appeal on several allegations of error: (1) that evidence of the victim's death was presented to the jury; (2) that the trial court did not fully explore the motives of a chief defense witness in claiming his Fifth Amendment right not to testify; (3) that the trial court did not rule on defendant's objections to statements of the district attorney in closing argument; (4) that a police detective was permitted to testify that a weapon found at the scene had not been fired; and (5) that the trial court denied defendant's motion for new trial based on newly discovered evidence.

I.

Defendant contends the court erred in admitting the statements of two prosecution witnesses who informed the jury of the death of Lucero and in allowing the jury to view a photograph of the face of the victim

following death. He argues the jury's knowledge of the death of the victim necessarily tended to prejudice them against defendant.

One of the witnesses, detective Frankeberger, testified that his investigation twice took him to the coroner's office, thus implying that the victim had died. The other witness, Dr. Clark, was the pathologist who had performed the autopsy on Lucero. Dr. Clark indicated to the jury that Lucero had died from injuries inflicted by a gunshot, and that death had not been instantaneous.

In light of all of the evidence which was presented during trial, the remarks of detective Frankeberger concerning his visits to the coroner's office were not prejudicial to defendant. Furthermore, no objection was raised by defense counsel concerning this testimony.

The photograph in question had been taken by detective Frankeberger and showed marks on Lucero's face. According to evidence given by Dr. Clark, the lacerations probably were inflicted by the belt buckle of defendant. The only objection made by defense counsel before the photograph was shown to the jury went to a possible prejudicial effect of the picture itself and that it was cumulative. It is settled law in Colorado that such a photograph is admissible graphically to portray the location, nature, and extent of wounds; and that such a photograph is competent evidence of any relevant matter which it is competent for a witness to describe in words. *Young, Jr. v. People*, 175 Colo. 461, 488 P.2d 567 (1971); *Gass v. People*, 177 Colo. 232, 493 P.2d 654 (1972).

It is clear from the testimony that the evidence of death was admitted only as it was inextricably interwoven with the principal transaction. The statements of Dr. Clark as to the cause and time of Lucero's death were necessary to the jury's understanding of the offense involved. *Armijo v. People*, 134 Colo. 344, 304 P.2d 633 (1956). Dr. Clark made it clear that Lucero had probably been alive at the time of the beating. He testified that death had resulted, not from that beating, but from a gunshot wound. The court carefully instructed the jury that the defendant had nothing to do with Lucero's death and that the fact that the victim had died must not influence their deliberation.

## II.

Defendant had subpoenaed one Oscar Martinez to testify in his behalf. Before defense counsel had had an opportunity to interrogate Martinez, counsel learned that the witness intended to claim his Fifth Amendment right not to incriminate himself. At an *in camera* hearing the witness affirmed his intention not to testify, stating that a prior statement he had given to an investigator as to his innocence in connection with these events had been false. At this point, an attorney — a spectator who was not involved in the case — advised the court that the witness should not have to testify further. The court agreed, ruling that if it were possible that perjury or self-incrimination might result from the testimony, the

witness should be excused.

■ Although we think that it was highly improper for the attorney to inject himself into the proceedings, we disagree with defendant's contention that there was not sufficient examination into the motives of this witness in claiming his constitutional privilege not to testify. The witness need not reveal in detail the testimony which is the subject of the inquiry. It simply must be apparent from the setting that the testimony could tend to incriminate the witness. *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1950). Further, to sustain the claim, the testi-. mony need not be so damning on its face as to guarantee a subsequent conviction of the witness. *Blau v. United States*, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950). In reaching its ultimate decision, the court should only deny the witness' claim if it is absolutely clear that the witness is mistaken and the testimony could not possibly incriminate him. *Hoffman, supra.* Martinez' statement that he had made a false report to the investigator denying any guilt in the transaction was sufficient to justify the court's upholding the witness' claim.

### III.

■ Detective Frankeberger investigated the scene the morning following the events in this case. He testified that he had found there an automatic pistol and that in his opinion the weapon had not been fired. Prior to stating this opinion, the detective had described to the jury how an automatic pistol works and that he was familiar with its functioning. Defense counsel objected to the court's accepting expert testimony from this witness. The court permitted "a very simply explanation" to be elicited as to the witness' opinion. This was not error. The detective did not testify as an expert witness, concerning intricate ballistics examinations. He testified merely as to the condition in which he had found the weapon.

### IV.

■ We hold that the remarks made by the district attorney were a reasonable interpretation of the evidence and therefore were not error. Also the denial of the motion for new trial was correct.

Judgment affirmed.

MR. JUSTICE HODGES does not participate.