The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Edward J. MATTAS,
Defendant-Appellant.

Edward J. MATTAS, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Nos. 80SA192, 80SC143.

Supreme Court of Colorado,
En Banc.

March 22, 1982.

As Modified on Denial of Rehearing
May 24, 1982.

256

J. Gregory Walta, Colorado State Public Defender, Margaret L. O'Leary, Deputy State Public Defender, Denver, for Edward J. Mattas.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for The People of the State of Colorado.

DUBOFSKY, Justice:

We granted certiorari to review the Court of Appeals' decision in *People v. Mattas*, Colo.App., 618 P.2d 675 (1980). The defendant, Edward J. Mattas, separately appealed his sentence, imposed by the El Paso County District Court, and the Court of Appeals transferred the sentence appeal to this Court.[1] We consolidated the cases and now affirm the defendant's conviction and sentence.

A jury found the defendant guilty of first-degree sexual assault, section 18–3–402, C.R.S.1973 (1978 Repl.Vol. 8) and first-degree burglary, section 18–4–202, C.R.S. 1973 (1978 Repl.Vol. 8). The defendant challenges the convictions on the grounds that the district court improperly instructed the jury and failed to exclude inadmissible

1. The case was transferred pursuant to sections 13–4–102 and –110, C.R.S.1973, because one of the grounds of the defendant's sentence appeal was a challenge to the constitutionality of legislative actions taken in adopting H.B. 1589, 1977 Colo.Sess.Laws ch. 216, 18–1–105 at 861.

evidence. The defendant also challenges his sentence as excessive and maintains that he should have been sentenced under the presumptive sentencing provisions of H.B. 1589.

About 3:00 a. m. on November 13, 1976, the victim, a school teacher living in Green Mountain Falls, Colorado, awoke to find the defendant in her bedroom. She screamed, and he hit her and put his hand down her throat until she began to gag. The defendant then sexually assaulted the victim twice in the course of the next two hours. The defendant, who lived in a trailer less than 50 feet away from the victim's apartment, left about 5:00 a. m. and the victim called friends who summoned the police. As a result of the assault, the victim suffered injuries to her head and neck including a broken nose, a bruised and swollen jaw and cuts requiring stitches on the inside of her mouth.

### I.

■ The defendant argues that the trial court inadequately instructed the jury as to the mental state required for conviction under the first-degree sexual assault statute at the time the offense was committed. Section 18–3–402, C.R.S.1973 (1977 Supp.; current version in 1978 Repl.Vol. 8) described the acts necessary for conviction of first-degree sexual assault, but did not include an applicable mental state.[2] Jury Instruction No. 9 given at trial setting out the elements of first-degree sexual assault also omitted any reference to a culpable mental state. Instruction No. 10 contained definitions of the terms used in the elements instruction. It also did not mention the mental state. Instruction No. 11 instructed

the jury that joint operation of an act forbidden by law and a culpable mental state is required to convict and that the culpable mental state "means intentionally as the term is explained in this instruction." The instruction went on to define "intentionally."[3]

■ The due process clause of the United States Constitution protects an accused against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), including proof of the mental state of the accused. *People v. Martinez*, Colo., 634 P.2d 26 (1981); *People v. Hardin*, 199 Colo. 229, 607 P.2d 1291 (1980). It is the duty of the trial court to instruct the jury properly on all matters of law, *People v. Woods*, 179 Colo. 441, 501 P.2d 117 (1972), and instructions which fail to define all the elements of an offense charged, so that the jury may decide whether they have been established beyond a reasonable doubt, are constitutionally deficient. *People v. Martinez, supra; People v. Hardin, supra.* Despite the defendant's failure to object to alleged defects in the instructions at trial or in his new trial motion, we may consider the validity of the instructions. Failure to properly instruct the jury with respect to an essential element of the crimes charged constitutes plain error. *People v. Hardin, supra; People v. Archuleta*, 180 Colo. 156, 503 P.2d 346 (1972).

■ Recently, in *People v. Martinez, supra*, we stated:

[W]hen a *mens rea* element is prescribed in the statute defining an offense, the

---

**2.** In 1977, the General Assembly amended the first-degree sexual assault statute to require that the offender act "knowingly." Colo.Sess. Laws ch. 224, 18–3–402 at 962. (Effective July 1, 1977.) Although the statute in force at the time of the defendant's conviction did not prescribe a culpable mental state, the required mental state may be implied from the statute. *People v. Bridges*, 199 Colo. 520, 612 P.2d 1110 (1980) (*Bridges I*).

**3.** Assuming that "knowingly," the mental state required by the current statute (see n. 2, *supra*), is the proper mental state applicable to first-degree sexual assault, the definition in Instruction No. 11 of "intentionally" instead of "knowingly" does not render the jury instructions defective, since the requirement that the jury find the more culpable mental state of "intentionally" can only inure to the benefit of the defendant. *See* section 18–1–503(3), C.R.S. 1973 (1978 Repl.Vol. 8); *People v. Mack*, Colo., 638 P.2d 257 (1981).

court should always include the *mens rea* element in the definition of the crime instruction. If it does not do so, unless from all the instructions taken as a whole the jury is clearly instructed as to the prescribed *mens rea* element, the instructions are constitutionally deficient.

634 P.2d at 30. In *People v. Bridges*, Colo., 620 P.2d 1 (1980) (*Bridges II*), we indicated that, whether or not a *mens rea* element is prescribed in the statute defining an offense, clearly it is sounder judicial practice to include the appropriate culpable mental state in the instruction setting out the elements of the offense. However, failure, as in this case, to include the mental state in the elements instruction does not render the instructions fatally defective, as long as the instructions, read and considered in their entirety, clearly instruct the jury as to the required *mens rea* element. *People v. Martinez, supra; Bridges II, supra.* Therefore, we must examine the instructions here as a whole to ascertain whether the district court clearly instructed the jury as to the *mens rea* applicable to first-degree sexual assault.

█ In addition to Instruction No. 9, which set out the elements of first-degree sexual assault, Instruction No. 10, which defined the terms in No. 9, and Instruction No. 11, the joint operation instruction which defined "intentionally," the court gave the jury three instructions pertaining to the burglary charge. Instruction No. 12 set out the elements of first-degree burglary, including the culpable mental state of "specific intent"; Instruction No. 13 set out the affirmative defense of intoxication; and Instruction No. 14, another joint operation instruction, defined "specific intent." Because there were two joint operation instructions, one for each of the two substantive offenses, and each was closely linked to the applicable elements instruction, we conclude that the district court adequately apprised the jury that it must find that the defendant possessed the requisite mental state for each charge. *See People v.*

*Bridges*, 199 Colo. 520, 612 P.2d 1110 (1980) (*Bridges I*).

The defendant contends that our decision in *Bridges II, supra*, in which we held invalid jury instructions similar to those at issue here, should control the result in this case. We disagree. The defendant in *Bridges II* was convicted of engaging in a riot, third-degree assault and felony menacing. The trial court gave the jury a single joint operation instruction which defined two mental states, "intentionally" and "specific intent." The instructions setting out the elements of two of the offenses, third-degree assault and felony menacing, included the culpable mental states applicable to each of those charges. However, the instructions setting out the elements of engaging in a riot did not prescribe a culpable mental state.[4] We concluded from an examination of the instructions as a whole that they did not clearly inform the jury that a culpable mental state was applicable to the riot charge. The elements instructions for the other two charges each included one of the two culpable mental states defined in the joint operation instruction. The joint operation instruction also limited the "specific intent" definition to the felony menacing charge. As a whole, the instructions implied that, while the other two charges each had a requisite mental state, the riot charge did not. Thus, the jury may have convicted the defendant of engaging in a riot without finding that he possessed the requisite mental state.

Our conclusion here is consistent with our recent decision in *People v. Martinez, supra.* In that case, the defendant was convicted of second-degree sexual assault and false imprisonment. The prescribed mental state for both charges is "knowingly." The court gave a single joint operation instruction defining "knowingly" and separate instructions defining the elements of each crime. The instruction defining the elements of false imprisonment included the mental state, but the second-degree sexual assault instruction did not. We concluded that:

---

4. The engaging in a riot statute, section 18–9–104, C.R.S.1973 in effect at the time of the trial in *Bridges II* did not include a mental state.

We concluded for purposes of our decision in *Bridges II* that the mental state of "knowingly" was implied by the riot statute. 620 P.2d at 3.

By including the statutory *mens rea* in the definitional instruction of false imprisonment but omitting it from the definitional instruction of second-degree sexual assault, the jury was in effect instructed that the *mens rea* element must be proven beyond a reasonable doubt as to false imprisonment but not as to second degree sexual assault.

634 P.2d at 29.

■ The instructions in the case before us are distinguishable from those given in *Martinez* because here the jury was given *two* joint operation instructions, one for each criminal charge. No reasonable jury would conclude, as they might from the *Martinez* instructions, that no mental state was required for conviction of first-degree sexual assault even though, consistent with the statute in effect at that time, the elements instruction did not include an applicable mental state. The rule applied in both the *Martinez* case and this case is that the jury must be *clearly* instructed as to the mental state applicable to a crime. Instructions which, taken as a whole, are confusing or which imply to the jury that no mental state is required to convict are not adequate.[5]

The defendant also contends that Instruction No. 13 on voluntary intoxication,[6] given *sua sponte* by the court, was reversible error because it conflicted with his principal defense—that he was not the person who had committed the crimes. According to the defendant, the intoxication instruction would create the confusing situation of inconsistent defenses, in essence telling the

jury "I didn't do it, but if I did, I was drunk."

■ The record contains evidence, including the defendant's own testimony, that he was intoxicated on the night in question. Where the evidence supports an intoxication defense, it is appropriate for a trial court to instruct on that defense. *People v. Lundborg*, 39 Colo.App. 498, 570 P.2d 1303 (1977).[7] The defendant has shown no damage to his case caused by the instruction, *People v. Aragon*, 186 Colo. 91, 525 P.2d 1134 (1974), and since the defendant did not object to it, offer a substitute at trial, or include the asserted error in his motion for a new trial, we will not consider the appropriateness of the instruction on appeal. *Lamb v. People*, 181 Colo. 446, 509 P.2d 1267 (1973).

II.

The defendant also contends that the trial court erred in admitting evidence concerning pubic hair samples taken from him because the police impermissibly obtained the samples. Although the victim apparently had seen the defendant sometime prior to the assault, she did not immediately identify him as her assailant. However, certain of the attacker's statements to the victim and marks in the new-fallen snow around the victim's apartment led the police to suspect that an individual staying in the defendant's trailer had committed the assault. At about 8 a. m. the morning of November 13, a Green Mountain deputy marshall and an El Paso County deputy

5. In *Martinez*, we relied on *People v. Hardin*, 199 Colo. 229, 607 P.2d 1291 (1980) where the defendant was convicted of first-degree assault, second-degree assault, attempted criminally negligent homicide, and crime of violence. The elements instruction in *Hardin* for first-degree assault did not include the statutory *mens rea* of "knowingly" and the single joint operation instruction defined several different mental states. Thus, confusion existed as to the proper *mens rea* to be applied by the jury to the first-degree assault charge. *See People v. Martinez*, Colo., 634 P.2d 26, 29 (1981). Again, the instructions in *Hardin* are distinguishable from those given the jury in this case because the single joint operation instruction given in *Har-*

*din* did not clearly inform the jury *which* mental state applied to the first-degree assault charge, whereas here the two separate joint operation instructions could each be clearly tied to the applicable elements instruction.

6. Instruction No. 13 states: "It is an affirmative defense to the crime of First Degree Burglary that the defendant, by reason of intoxication, did not have the capacity to form the specific intent required by that offense."

7. Under some circumstances a court's *failure* to instruct *sua sponte* on intoxication may result in reversible error. *See Martinez v. People*, 172 Colo. 82, 470 P.2d 26 (1970).

sheriff entered the defendant's trailer and looked around with his permission. At about 10 a. m., another officer from the El Paso County Sheriff's Office entered the defendant's trailer with his permission. The defendant voluntarily handed over to this officer the underwear he was wearing and furnished a sample of his pubic hair for comparison with hairs recovered from the victim's sheets. Expert testimony at trial matched a hair found in the victim's bed with the defendant's hairs.

 The defendant contends that the hairs and other evidence were obtained without adhering to the procedures set out in Crim.P. 41.1 and in violation of constitutional guarantees against impermissible investigative procedures. However, the defendant did not move to suppress the evidence, nor was any objection made to its introduction at trial or in the defendant's new trial motion. Preservation of a defendant's right to challenge a trial court's evidentiary rulings requires a pre-trial motion to suppress the evidence or an objection at trial to its introduction. *Salazar v. People*, 153 Colo. 93, 384 P.2d 725 (1963). *See* Crim.P. 41(e).

 Moreover, the record here indicates that the defendant surrendered the evidence voluntarily. Such voluntary surrender of nontestimonial evidence waives Fourth Amendment protections. *People v. Hannaman*, 181 Colo. 82, 507 P.2d 466 (1973). The defendant did not contest the voluntariness of his production to the officers of this evidence at trial. In the absence of objection from the defendant, the trial court had no obligation to raise the issue of voluntariness on its own motion. *People v. Sanchez*, 180 Colo. 119, 503 P.2d 619 (1972); *Neighbors v. People*, 171 Colo. 349, 467 P.2d 804 (1970).

 The expert testimony matching the hairs was merely corroborative of other evidence tending to prove the defendant's guilt. Where, as here, the defendant failed to make timely objection to the introduction of evidence not crucial to the determination of guilt, this Court will not consider evidentiary issues raised for the first time on appeal. *People v. McClure*, 190 Colo. 250, 545 P.2d 1038 (1976). *See Salazar v. People, supra*; Crim.P. 41(e). *See also* Crim.P. 52.

### III.

 The defendant also contends that the trial court erred in admitting into evidence photographs which showed the defendant's large turquoise ring held next to bruises on the victim's face which the prosecution claimed matched the ring's distinctive pattern. The defendant argues that the photographs did not corroborate the prosecution's theory that the bruises reflected the ring's pattern, and that the prejudicial effect of the photographs, which showed the victim's bruised and swollen face, outweighed their probative value. We disagree. It is within the trial court's discretion to decide whether photographs are unnecessarily gruesome or inflammatory, and the court's decision will be reversed only upon abuse of that discretion. *People v. Moreland*, 193 Colo. 237, 567 P.2d 355 (1977); *People v. Steele*, 193 Colo. 87, 563 P.2d 6 (1977); *People v. Hosier*, 186 Colo. 116, 525 P.2d 1161 (1974). *See People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978). Photographs may be introduced to show any matter which a witness could describe in words, including the appearance of the victim. *People v. Sepeda, supra; People v. Moreland, supra; People v. Steele, supra; People v. Borjas*, 191 Colo. 218, 552 P.2d 26 (1976); *Sandoval v. People*, 172 Colo. 383, 473 P.2d 722 (1970).

 The photographs were not admitted solely to establish the connection between the ring and the bruises, but also to establish that the victim had been injured. Use of force or violence is an element of first-degree sexual assault and a proper foundation was laid for admitting the photographs to show use of force. *Stout v. People*, 171 Colo. 142, 464 P.2d 872 (1970). *See People v. Borjas, supra*. While the prosecution witness who took the photographs admitted that they did not show to his satisfaction the correlation between the ring pattern and the pattern of bruises he had wished to

illustrate, his testimony affected the weight and not the admissibility of the evidence. *People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1976). Even if of limited probative value, the photographs were not unduly prejudicial. The jury heard testimony about the victim's injuries. The photographs merely illustrated more clearly what the oral testimony described. *People v. Moreland, supra.* We find no error in the admission of these photographs.

## IV.

The defendant contends that the victim's pre-trial and in-court identifications of him were the product of impermissibly suggestive procedures and thus should have been excluded as inherently unreliable. The defendant lived in a trailer next door to the victim's apartment building, and the victim apparently had seen the defendant on at least one occasion prior to the assault. At the hospital several hours after the attack, the victim, shown photographs of five men, said she recognized the defendant's face, but that she wanted to look at people, not photographs, before making a positive identification. Later, at the preliminary hearing, the victim selected the defendant from among five other men dressed alike, and at trial, the victim identified the defendant as the individual who assaulted her.

 Pre-trial identification procedures which, given the totality of circumstances, are so unnecessarily suggestive as to render the identification unreliable violate due process. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *People v. Mack*, Colo., 638 P.2d 257 (1981). Similarly, a defendant is denied due process if an in-court identification is based on an unnecessarily suggestive out-of-court identification. *Moore v. Illinois*, 434 U.S. 220, 227, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977). *See also Manson v. Brathwaite, supra; Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). An out-of-court identification made as a result of an unnecessarily suggestive identification procedure is inadmissible as violative of due

process unless the identification can be shown under the totality of circumstances to be reliable, despite the suggestiveness of the procedure used. *Manson v. Brathwaite, supra; People v. Mack, supra.* A subsequent in-court identification by the witness is permissible only if the prosecution can show by clear and convincing evidence that the in-court identification is not the product of the unconstitutional procedure but, rather, is based upon an independent source such as the witness' observations of the accused during the commission of the offense. *E.g., Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *People v. Thatcher*, Colo., 638 P.2d 760 (1981); *Huguley v. People*, 195 Colo. 259, 577 P.2d 746 (1978). The defendant, who did not raise the identification issue in his new trial motion, has failed to indicate anything in the record which would support his claim that unnecessarily suggestive procedures invalidated the pre-trial identification. Both identifications were supported by several important indicia of reliability. *See Manson v. Brathwaite, supra; Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *People v. Mack, supra; People v. Huguley, supra.* The victim had ample opportunity to view her assailant; she gave a detailed description of him; and she identified him at the preliminary hearing without hesitation. Under these circumstances, we find no error in the admission of either the out-of-court or in-court identification of the defendant. *See People v. Mack, supra.*

## V.

Upon the defendant's conviction for first-degree sexual assault and first-degree burglary, the district court sentenced him to concurrent terms of twenty to twenty-five years in the penitentiary. Both offenses were classified as class 3 felonies under section 18–1–105, C.R.S.1973, which authorized a minimum sentence of five years and a maximum of forty years. The defendant

contends that his sentence was excessive.[8] We disagree and affirm the defendant's sentence.

In reviewing the district court's imposition of sentence, we are to consider the following factors: the nature of the offense, the character of the offender, the public interest in safety and deterrence, and the sufficiency and accuracy of the information on which the sentence was based. Section 18–1–409(1), C.R.S.1973 (1978 Repl. Vol. 8) (1981 Supp.); C.A.R. 4(c) (1981 Supp.); *People v. Martinez*, Colo., 628 P.2d 608 (1981); *People v. Magee*, Colo., 626 P.2d 1139 (1981); *People v. Cohen*, Colo., 617 P.2d 1205 (1980); *People v. Scott*, Colo., 615 P.2d 35 (1980); *Triggs v. People*, 197 Colo. 229, 591 P.2d 1024 (1979); *People v. Duran*, 188 Colo. 207, 533 P.2d 1116 (1975). *See 4 A.B.A. Standards for Criminal Justice, Appellate Review of Sentences*, 20–1.2 (2d ed. 1980). Sentencing involves an exercise of judicial discretion and, accordingly, the sentencing judge has wide latitude in arriving at a final decision. *People v. Trujillo*, Colo., 631 P.2d 146 (1981); *People v. Magee, supra; People v. Cohen, supra.*

The same judge presided at the defendant's trial and sentencing. The judge had the benefit of a pre-sentence report prepared by the El Paso County Probation Department which indicated that, at the time the defendant was sentenced, he was twenty-four years old and had no prior felony record. The defendant did have three misdemeanor convictions, all involving his assaultive behavior while drunk.

Furthermore, the circumstances of this crime indicate the need for considering the defendant's potential danger to society. The defendant broke into the victim's apartment and in assaulting her, forced his hand down her throat until she gagged up blood, broke her nose and inflicted other injuries to her face and neck. The brutal nature of the offense justifies severe punishment. We note that the defendant's sentence is not the maximum that could have been imposed. Thus, despite the fact that the defendant has no prior felony record, we conclude that the court did not abuse its discretion in imposing a prison sentence of twenty to twenty-five years. *See People v. Euresti*, 187 Colo. 266, 529 P.2d 1319 (1975).

Judgment affirmed.

---

8. The defendant also contends that he is entitled to resentencing under the presumptive sentencing provisions of House Bill 1589, Colo. Sess.Laws 1977, ch. 216, 18–1–105 at 867. In *People v. McKenna*, Colo., 611 P.2d 574 (1980), we resolved the issues raised by the defendant adversely to his position, and we have adhered consistently to that opinion. *People v. Francis*, Colo., 630 P.2d 82 (1981).