**Kipling G. KEY, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 84SC96.**

Supreme Court of Colorado,
En Banc.

Jan. 31, 1986.

Rehearing Denied Feb. 24, 1986.

---

David F. Vela, Colo. State Public Defender, Rachel A. Bellis, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for respondent.

ERICKSON, Justice.

Kipling Key, the defendant, was convicted of first-degree murder [1] in the El Paso County District Court. The court of appeals affirmed. *People v. Key,* 680 P.2d 1313 (Colo.App.1984). The court held that

---

1. § 18–3–102(1)(a), 8 C.R.S. (1978).

although one of the trial court's jury instructions defining "after deliberation" was erroneous, the error was harmless beyond a reasonable doubt. We granted certiorari and now affirm.

## I.

Key was charged with the first-degree murder of James Shadday. Key admitted that he killed Shadday but maintained at trial that he acted in a hasty and impulsive manner in a fight with Shadday.[2]

Harold Duane Johnson, a friend of both Key and Shadday, was the prosecution's chief witness. His testimony established the facts surrounding the homicide and also provided the jury with evidence about the relationship between Key and Shadday.

Johnson met Key and Shadday in November 1980, when the two men were sharing a room with Johnson's younger brother, John, at the United States Army base at Fort Carson. Johnson was also in the Army at the time of the homicide but lived off the base. Shadday owned a four-wheel drive pickup truck and, according to Johnson, gave Key a set of keys to the vehicle. Johnson testified that Shadday and Key drove into the mountains on a weekly basis to practice target shooting with a two-shot .22 caliber derringer that Key kept, with Shadday's approval, in the glove compartment of the truck. Johnson considered Key and Shadday to be good friends and stated that he had never seen them argue or fight. Prior to his death, however, Shadday had been assigned to another room in the barracks at the request of Key and Johnson's brother. Shadday, according to Johnson, was upset at being asked to move.

Johnson testified that on Wednesday, May 13, 1981, he and Key went to a bar. During a discussion concerning Shadday's truck, Key told Johnson: "I could take Jimmy Shadday up in the mountains and shoot him.... I could take the truck because I had been buying the truck from him...." Other evidence indicated that Key and Shadday had gone shopping for trucks that week but Key had been told by a salesman that he could not qualify for a loan. Johnson had not been alarmed by Key's statement because he did not think Key was serious.

Johnson last saw the victim late in the afternoon on Thursday, May 14. The next day he saw his brother and Key driving on the base in Shadday's truck. Key explained his possession of the victim's vehicle to Johnson by telling him that Shadday had gone AWOL (absent without official leave) after selling his truck to Key. On that same day, Key went to the dealership which sold the truck to Shadday and attempted to have the vehicle's registration changed to his name so that he could take over the remaining payments. Later that evening, Key came to Johnson and confessed that he killed Shadday. Key told Johnson that he and Shadday had gone to the mountains to do some target shooting. He said that they began to argue about the room situation. During an ensuing fistfight, Key shot the victim four times in the head. Johnson testified that Key told him: "And he [Shadday] wouldn't die, and I picked up a rock and mashed his head in, and he still wouldn't die. So I took his truck and ran over his head, and he still wouldn't die. And I got scared and drug him out in the woods."

---

**2.** The defendant rested without calling any witnesses to testify on his behalf. The trial court gave the following jury instruction tendered by the defendant:

*Instruction No. 18.* It is the contention of the defense in this case that Kipling Key is not guilty of the offense of Murder in the First Degree, but is, instead, guilty of Manslaughter. The defense admits that Kipling Key killed the victim but contends that the killing was not "after deliberation" because the evidence has not shown beyond a reasonable

doubt that Key made a decision to kill the victim after the exercise of reflection and judgment concerning the act. The defense claims that the evidence shows instead that the killing was committed in a hasty and impulsive manner, provoked by an argument and fight with the victim.

If, after considering all of the evidence, you have a reasonable doubt that the killing was committed after deliberation, your verdict must be not guilty of Murder in the First Degree.

Shadday's body was discovered by a jogger about noon on Friday, May 15, on Gold Camp Road outside of Colorado Springs. Shadday had four gunshot wounds, two to the front of his head and two to the back of his head. His skull had been crushed, and there were tire-track impressions across his forehead. Empty shell casings, a bloodied rock, and tread marks matching the tires on the victim's truck were found in the immediate vicinity. A number of empty and half-filled beer bottles were also found in the area. The El Paso County coroner testified that Shadday died of a "massive cranial cerebral trauma ... with extrusion or squeezing out of most of the brain at the time of the death."[3] In the coroner's opinion, the victim's blood alcohol level of 0.127 indicated that he may have consumed about six or seven bottles of beer before his death.

The central issue at trial was whether Key killed Shadday after deliberation. Accordingly, in two separate instructions, the trial court instructed the jury on the meaning of deliberation. Instruction No. 14 provided:

> The term "after deliberation" means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner.

Instruction No. 15 stated:

> The element of deliberation is established by proof of the formed designed [sic] to kill, and length of time is not a determinative factor. The only time requirement for deliberation within the meaning of the first degree murder statute is an interval sufficient for one thought to follow another.

Instruction No. 17 required that the requisite culpable mental state of the defendant had to be proven beyond a reasonable doubt.

The trial court overruled Key's objection to Instruction No. 15 and submitted the instructions to the jury. In the course of the jury's deliberations, the jury sent a note to the trial judge stating: "Need additional explanation of deliberation." The trial court replied that it could not give any further explanation other than what was already contained in the instructions. The jury found Key guilty of first-degree murder. His motion for a new trial was denied and he was sentenced to life imprisonment.

Key appealed, alleging that the trial court committed reversible error in giving Instruction No. 15. The court of appeals acknowledged that the second sentence of the challenged instruction included language that was rejected by this court in *People v. Sneed,* 183 Colo. 96, 514 P.2d 776 (1973), but held that under *People v. Blair,* 195 Colo. 462, 579 P.2d 1133 (1978), the error was harmless beyond a reasonable doubt because the evidence of deliberation was overwhelming.

## II.

■ Key concedes that Instruction No. 14 is a correct statement of the law but argues that the second sentence of Instruction No. 15 contradicted the statutory definition of "after deliberation" and effectively lowered the prosecution's burden of proving deliberation as an element of first-degree murder.

Section 18–3–102(1)(a), 8 C.R.S. (1978), provides that "[a] person commits the crime of murder in the first degree if ... [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person." The term "after deliberation" is defined in section 18–3–101(3), 8 C.R.S. (1978), to mean "not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been

---

**3.** The coroner testified that he conducted several tests on the body at 5:38 p.m. on May 15. The results of these tests indicated that the victim died ten to twenty hours earlier, or between approximately 9:30 p.m. on May 14 and 7:30 a.m. on May 15.

committed in a hasty or impulsive manner." *See People v. Bartowsheski*, 661 P.2d 235, 242 (Colo.1983) ("[W]hile deliberation requires that a design to kill precede the killing, the length of time required for deliberation need not be long.... What is required for the element of deliberation is that the decision to kill be made after the exercise of reflection and judgment concerning the act.").

The language used in Instruction No. 15—that deliberation requires only an "interval sufficient for one thought to follow another"—originated in *Van Houton v. People*, 22 Colo. 53, 43 P. 137 (1895). In *Van Houton*, the defendant appealed his first-degree murder conviction on the ground that the evidence was insufficient to establish deliberation and premeditation.[4] We upheld the conviction, stating:

Time ... is not essential if there was a design and determination to kill formed in the mind of the defendant previous to or at the time the mortal wound was given. It matters not how short the interval, if it was *sufficient for one thought to follow another*, and the defendant actually formed the design to kill, and deliberated and premeditated upon such design before firing the fatal shot, this was sufficient to raise the crime to the highest grade known to the law.

*Van Houton*, 22 Colo. at 66, 43 P. at 142 (emphasis added). Trial courts incorporated this language into jury instructions which stated that premeditation and deliberation may occur in a time interval "sufficient for one thought to follow another," and such instructions were approved by this court. *See Hammil v. People*, 145 Colo. 577, 361 P.2d 117, *cert. denied*, 368 U.S. 903, 82 S.Ct. 182, 7 L.Ed.2d 98 (1961).

However, in *People v. Sneed*, 183 Colo. 96, 514 P.2d 776 (1973), we disapproved of the *Van Houton* language. *Sneed* declared that the legislature intended to abandon the *Van Houton* definition of premeditation when it defined the culpable mental state of first-degree murder as "premeditated intent" and the culpable mental state of second-degree murder as "intentionally, but without premeditation." We said:

In effect, by emphasizing that "premeditated intent" and "intentionally, but without premeditation" were different, and that premeditation required design before the act, it indicated deliberation and reflection were necessary to create the premeditated intent.

This means that between the forming of the intent to do the act and the act itself, an appreciable length of time must have elapsed to allow deliberation, reflection and judgment.... A premeditated act ... is never one which has been committed in a hasty or impulsive manner.

*Sneed*, 183 Colo. at 100, 514 P.2d at 778 (citations omitted).

Six months after *Sneed* was announced, the legislature amended the first-degree murder statute and defined "after deliberation" in terms substantially similar to those used by this court in its interpretation of the word "premeditation." *Compare* Ch. 52, sec. 1, § 40–3–101, 1974 Colo.Sess.Laws 251, *with Sneed*, 183 Colo. at 100, 514 P.2d at 778. Thus, the General Assembly did not resurrect the *Van Houton* definition, although it had an opportunity to do so.

Our analysis of *Van Houton, Sneed*, and the series of statutory enactments defining the elements of first-degree murder lead us to the conclusion that the legislature ac-

---

**4.** In 1895, the murder statute, in pertinent part, provided:

Malice shall be implied when no considerable provocation appears, or when all circumstances of the killing show an abandoned and malignant heart. All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any kind of wilful, deliberate and premeditated killing; ... or perpetrated from a deliberate and premeditated design,

unlawfully and maliciously, to effect the death of any human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others, and indicating a depraved mind regardless of human life, shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree.... 1 Mills' An. Statutes, sec. 1176.
*Van Houton*, 22 Colo. at 65–66, 43 P. at 142.

cepted our holding in *Sneed* that the *Van Houton* instruction is incompatible with the legislatively mandated definition of "after deliberation." *Cf. Music City, Inc. v. Duncan's Estate*, 185 Colo. 245, 248, 523 P.2d 983, 985 (1974) ("[W]here a legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it must be concluded that the legislature has agreed with the judicial construction."). Therefore, the trial court erred when it submitted Instruction No. 15 to the jury.

### III.

Having concluded that Instruction No. 15 contains an erroneous definition of "after deliberation," we must now consider whether that error was of constitutional magnitude and, if so, whether the error was harmless beyond a reasonable doubt.

▮ Under the due process clause of the fourteenth amendment to the United States Constitution an accused may not be convicted of a criminal offense "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The prosecution's burden includes proving beyond a reasonable doubt that Key possessed the culpable mental state required by the applicable statute. *People v. Mattas*, 645 P.2d 254 (Colo.1982). It is the duty of the trial court to properly instruct the jury on all matters of law, and instructions which fail to correctly define the elements of an offense charged, so that the jury may decide whether they have been established beyond a reasonable doubt, are constitutionally deficient. *Id.*

▮ We believe that Instruction No. 15 was constitutionally deficient. Standing alone, the instruction defined the essential element of "deliberation" in a manner inconsistent with section 18–3–101(3), 8 C.R.S. (1978), and *Sneed*, 183 Colo. at 96, 514 P.2d at 776. However, error of constitutional dimension does not require reversal if the error was harmless beyond a

reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Graham v. People*, 705 P.2d 505 (Colo.1985); *People v. Myrick*, 638 P.2d 34 (Colo.1981); *People v. Blair*, 195 Colo. 462, 579 P.2d 1133 (1978). In the context of an erroneous jury instruction on a culpable mental state, we have previously considered two factors to determine whether the error was harmless beyond a reasonable doubt. First, the court reviews the jury instructions as a whole to ascertain whether—despite the erroneous instruction—the jury must have found that the defendant acted with the required mental state. *People v. Blair*, 195 Colo. at 462, 579 P.2d at 1133. Second, we consider whether the evidence on the issue of *mens rea* was overwhelming. *Id.*

We do not believe that Instruction No. 15 permitted the jury to return a guilty verdict without finding that Key killed Shadday "after deliberation," as that term is defined in section 18–3–101(3), 8 C.R.S. (1978), and in *Sneed*, 183 Colo. at 96, 514 P.2d at 776. Instruction No. 14 defined "after deliberation" in terms identical to those contained in section 18–3–101(3). Instruction No. 18, the defendant's theory of the case, also employed the statutory language defining "after deliberation." The erroneous language in Instruction No. 15 did not so distort the definition of "after deliberation" in Instruction No. 14 that the prosecution was relieved of its burden of proving the mental culpability requirement of first-degree murder beyond a reasonable doubt.

Additionally, the evidence on the issue of deliberation was overwhelming. The evidence established that Key wanted a truck like Shadday's but could not afford one. There was also evidence that Key was in the process of buying Shadday's truck and had made several payments on the vehicle. The day before the killing, Key told Harold Johnson that he "could take Jimmy Shadday up in the mountains and shoot him.... I could take the truck because I had been buying the truck from him...." Key did in fact go up to the mountains with Shad-

day the following day. After a fight developed between the two men, Key shot Shadday four times in the head. The evidence indicated that Key used his two-shot derringer pistol to shoot Shadday.[5] Thus, Key had to reload the pistol before firing the third and fourth shots. Shadday had four gunshot wounds, two to the front of his head and two to the back of his head. After shooting Shadday, Key, believing that Shadday was still alive, mashed his head in with a rock. Key next positioned Shadday beneath his truck and ran over his head. He then dragged Shadday into the trees. Before leaving, Key removed Shadday's wallet and identification from his body. The following day, Key was seen driving Shadday's truck and said that Shadday had sold it to him and had gone AWOL.

In our view, this evidence overwhelmingly demonstrates that Key killed Shadday after deliberation. The jury could have reasonably believed that Key had decided to kill Shadday as early as the day before the homicide, when Key told Johnson that he could take Shadday to the mountains, shoot him, and take his truck. The sequence of events in the mountains the next day also demonstrates deliberation under the test announced in *Sneed*, 183 Colo. at 96, 514 P.2d at 778. As we have stated, *Sneed* requires that an "appreciable" length of time must have elapsed between the forming of the intent to do the act and the act itself. Here, even assuming that Key fired the first two shots without deliberation, an appreciable period of time elapsed before the third and fourth shots. Another appreciable length of time elapsed between the fourth shot and the moment when Key began mashing in Shadday's head with a rock. A final appreciable length of time elapsed between the time Key put down the rock, got into the truck, and drove over Shadday's head. In each

such period, Key had sufficient time to deliberate whether to kill Shadday. There is no support in the record for Key's contention that he killed Shadday in a hasty or impulsive manner. Accordingly, the error in Instruction No. 15 was harmless beyond a reasonable doubt.

The judgment of the court of appeals is affirmed.

LOHR, J., dissents, and QUINN, C.J., joins in the dissent.

NEIGHBORS, J., dissents, and QUINN, C.J., and LOHR, J., join in the dissent.

LOHR, Justice, dissenting:

I join in Justice Neighbors' dissent and add a few remarks by way of emphasis.

The majority correctly notes that the "central issue at trial was whether Key killed Shadday after deliberation." Majority op. at 321. The judge properly instructed the jury in Instruction No. 14 that the term "after deliberation" includes the requirement that "the decision to commit the act has been made after the exercise of reflection and judgment concerning the act." However, the judge then incorrectly instructed the jury in Instruction No. 15 that "[t]he only time requirement for deliberation within the meaning of the first degree murder statute is an interval sufficient for one thought to follow another." This latter instruction erroneously and importantly diluted the prior instruction on the need for reflection and judgment.

The majority concedes that Instruction No. 15 was in error, but holds that the error was harmless beyond a reasonable doubt. The majority finds that an appreciable length of time must have elapsed in each of the intervals between the various attacks by Key upon Shadday and goes on to find that in each period Key had sufficient time to deliberate whether to kill

---

**5.** As we have noted, Johnson testified that Key kept the derringer in Shadday's truck, and it was this weapon that the two men used to practice target shooting on a weekly basis. Although Key did not tell Johnson what weapon he used to shoot Shadday, Key did say that the

purpose of the May 14 trip to the mountains was to go target shooting. Further, the El Paso County coroner testified that the bullet holes in Shadday's head were "consistent with the low caliber slug.... And often a .22 caliber bullet will often allow you to survive for a while...."

Shadday. Majority op. at 324. Equally consistent with the evidence, I believe, is that the first two shots were fired in the course of a fight and without deliberation, as the majority is willing to assume, and thereafter Key engaged in a series of attacks upon Shadday in a frenzy born of panic. But it is not for an appellate court to draw these inferences one way or another. This is the role of a properly instructed jury. Here, not only was the instruction on deliberation, the "central issue at trial," in error, but the jury was so concerned about the existence of deliberation that in the course of its efforts to arrive at a verdict, it sought additional guidance from the court, without success. Thus, a serious question concerning the degree of Key's culpability was left for determination by a jury that had been erroneously instructed on the controlling legal standard and that had demonstrated its difficulty in resolving the issue by requesting a clarifying instruction. This is not the stuff of which harmless error is made. I dissent.

I am authorized to say that Chief Justice QUINN joins in this dissent.

NEIGHBORS, Justice, dissenting:

I agree with the court's holding that Instruction No. 15 was constitutionally deficient. However, I disagree that the constitutional error was harmless beyond a reasonable doubt. Therefore, I respectfully dissent.

I will first fully explicate my reasons for concluding that the erroneous definition of "after deliberation" contained in Instruction No. 15 is an error of constitutional magnitude. I will then explain why I believe the error is not harmless beyond a reasonable doubt.

I.

Under the due process clause of the fourteenth amendment to the United States Constitution an accused may not be convicted of a criminal offense "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The prosecution's burden includes proving beyond a reasonable doubt that the defendant possessed the culpable mental state required by the applicable statute. *People v. Mattas*, 645 P.2d 254, 257 (Colo.1982). It is the duty of the trial court to properly instruct the jury on all matters of law, and instructions which fail to correctly define the elements of an offense charged, so that the jury may decide whether they have been established beyond a reasonable doubt, are constitutionally deficient. *Id.*

In analyzing the effect of a particular instruction, an appellate court must examine the jury instructions in their entirety. *Mattas*, 645 P.2d at 258. Instructions which, taken as a whole, are confusing or which permit the jury to find the defendant guilty upon a showing by the prosecution of a lesser degree of culpability than required by the statute are not adequate. *See id.* at 259 ("The rule applied in ... this case is that the jury must be *clearly* instructed as to the mental state applicable to a crime.") (emphasis in original).

The Supreme Court recently addressed the due process implications of conflicting instructions pertaining to the element of intent in a homicide case. In *Francis v. Franklin*, — U.S. —, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), a prisoner shot and killed the resident of a nearby home while attempting to escape from custody after receiving treatment at a local dentist's office. The respondent prisoner had demanded the keys to the victim's car. As the victim was slamming his front door shut, the respondent's gun discharged. The bullet pierced the wooden door and struck the victim, inflicting a fatal chest wound.

The respondent was tried on a charge of malice murder. His sole defense was the lack of the requisite intent to kill, claiming that the homicide was an accident. Due to the ambiguous nature of the jury instruction on the pivotal issue of intent, the jury requested reinstruction on the intent element and the definition of accident. The

jury returned a guilty verdict, and the respondent was sentenced to death. The Supreme Court held that the instruction on intent, when read in the context of the jury charge as a whole, violated the fourteenth amendment's due process requirement that the state prove each element of a criminal offense beyond a reasonable doubt.[1]

The precise issue before the Court was "whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of . . . state of mind by creating a mandatory presumption of intent. . . ." *Francis v. Franklin*, 105 S.Ct. at 1971 (citations omitted). The Court found that, standing alone, the challenged language undeniably created an unconstitutional burden-shifting presumption with respect to the element of intent. It then examined the jury instructions taken as a whole to ascertain whether there was sufficient clarifying language to explain the proper allocation of the burdens of proof and persuasion. The Court determined that the charge could be read as instructing the jury that it was required to infer the intent to kill as a natural and probable consequence of the act of firing the pistol unless the respondent persuaded the jury that such an inference was unwarranted. Because a reasonable juror could have interpreted the challenged portions of the jury instructions as creating a mandatory presumption that shifted the burden of persuasion on the crucial element of intent to the defendant, the Court held that the critical instruction on intent and the instructions as a whole did not "comport with the requirements of the Due Process Clause." *Francis v. Franklin*, 105 S.Ct. at 1977.

The legal issue in the case before us is strikingly similar to that involved in *Francis v. Franklin*. In each of these cases, the theory of the defense was a lack of the requisite intent to kill. Both involved ambiguous jury instructions on the dispositive issue of intent. Both jury charges arguably had the effect of permitting the jury to find the defendant guilty upon a showing by the prosecution of a lesser degree of culpability than that required by the applicable statute. The jury in each case requested reinstruction on the intent element.

Thus, as in *Francis v. Franklin*, it is not clear that the instructions, taken as a whole, informed the jury that it could convict the defendant of first-degree murder only if the prosecution proved beyond a reasonable doubt that Key's intent to kill his friend was formed after the exercise of reflection and judgment and not in a hasty or impulsive manner. Confronted with the erroneous language in Instruction No. 15 that deliberation may occur in an "interval sufficient for one thought to follow another," a reasonable juror could easily have read these words as contradicting the preceding instruction, which correctly stated that an act committed after deliberation is never one which has been committed in a hasty or impulsive manner. "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Francis v. Franklin*, 105 S.Ct. at 1975 (1985) (footnote omitted). "If . . . two instructions are in direct conflict on the requisite culpable mental state, and one of the instructions is an incorrect and clearly prejudicial statement of law, the fact that the other instruction contains a correct statement of law cannot cure the error." *People v. Riley*, 708 P.2d 1359, 1365 (Colo. 1985).

With inconsistent and conflicting instructions to guide its deliberations, the jury

---

1. The trial court instructed the jury that the acts of a person of sound mind are presumed to be the product of a person's will, but the presumption may be rebutted; that a person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted; and that a person will not be presumed to act with criminal intention but the trier of facts may find such intention upon a consideration of the words, conduct, demeanor, motive and all of the circumstances connected with the act for which the accused is prosecuted. *Francis v. Franklin*, 105 S.Ct. at 1970.

could not properly evaluate the evidence to determine whether the prosecution had met its burden of proof on the element of "after deliberation." Because the instructions, taken as a whole, obfuscated that crucial element, the jury instructions were constitutionally deficient.

## II.

Pursuant to Crim.P. 52(a) any "error ... which does not affect substantial rights" of the defendant shall be disregarded. Before an instructional error of constitutional dimension can be held harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). *See also Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983);[2] *People v. Mascarenas,* 666 P.2d 101 (Colo.1983). In applying the harmless-constitutional-error rule, a reviewing court must assess the error in light of the facts of the case to determine whether the error affected the outcome of the trial. *See Graham v. People,* 705 P.2d 505 (Colo.1985).

In *Francis v. Franklin,* — U.S. —, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Supreme Court affirmed the decision of the Circuit Court of Appeals for the Eleventh Circuit which held that the instructional error was not harmless beyond a reasonable doubt. The court of appeals had earlier stated: "Here, Franklin admitted that he fired the gun and killed Mr. Collie. His only defense was that he did not have the requisite intent to kill. The facts did not overwhelmingly preclude that defense." *Francis v. Franklin,* 720 F.2d 1206, 1212 (11th Cir.1983). The Supreme Court upheld the court of appeals' conclusion that the evidence of intent was far from overwhelming, noting that the jury requested reinstruction on the elements of malice and accident.

Although the evidence against the defendant in this case is substantial, I am persuaded that the prosecution has failed to prove beyond a reasonable doubt that the erroneous instruction was harmless.[3] The element of "after deliberation" was the crucial factor in the prosecution's case against the defendant for first-degree murder since the defendant admitted that he committed the homicide but claimed that it was done during a fistfight provoked by the victim. The facts adduced at trial do not overwhelmingly preclude the defendant's theory of the case.[4]

---

2. Because the trial court's error was not harmless, I will not address the suggestion in *Connecticut v. Johnson* that some instructional errors of constitutional dimensions should not be analyzed for harmlessness. 460 U.S. at 83, 103 S.Ct. at 976. *See also People v. Etchells,* 646 P.2d 950, 951 (Colo.App.1982) ("The giving of an instruction which allows the jury to find the defendant guilty upon a lesser degree of culpability than that required by the statute constitutes plain error.... The weight of the evidence tending to show actual awareness cannot be used to justify a jury conviction which may be based upon the lesser degree of culpability.").

3. *Compare People v. Blair,* 195 Colo. 462, 579 P.2d 1133 (1978) (although a particular jury instruction contained erroneous language, the error did not constitute reversible error because the instructions taken as a whole adequately informed the jury of the culpable mental state required by the statute and there was also overwhelming evidence that the defendant knowingly committed the acts for which he was convicted).

4. The trial court gave the following jury instruction tendered by the defendant:

*Instruction No. 18.* It is the contention of the defense in this case that Kipling Key is not guilty of the offense of Murder in the First Degree, but is, instead, guilty of Manslaughter. The defense admits that Kipling Key killed the victim but contends that the killing was not "after deliberation" because the evidence has not shown beyond a reasonable doubt that Key made a decision to kill the victim after the exercise of reflection and judgment concerning the act. The defense claims that the evidence shows instead that the killing was committed in a hasty and impulsive manner, provoked by an argument and fight with the victim.

If, after considering all of the evidence, you have a reasonable doubt that the killing was committed after deliberation, your verdict must be not guilty of Murder in the First Degree.

The evidence indicated that the victim was upset about having been asked to move into another barracks. Key and Shadday frequently drove into the mountains to practice target shooting, and on May 14 brought along a twelve-pack of beer when they went to engage in that activity. Key and Shadday drank all but one of the bottles of beer before an argument developed between the two over the room situation. The coroner testified that the victim had consumed as many as six or seven bottles of beer before his death.

Shadday, whom Johnson described as having a quick temper and being tougher than Key, struck Key first and a fistfight developed between the two men. Key told Johnson that Shadday "had him on the ground." While Shadday was on top of the defendant and refused to stop hitting him on the head, Key shot the victim. In the coroner's opinion, the fresh bruises on the victim's left hand could have been caused by a fistfight. Johnson testified that Key's statement that he could take his friend into the mountains and shoot him did not alarm him because it did not appear to Johnson as though Key planned to kill Shadday. Johnson also admitted to having a poor memory when defense counsel cross-examined him about the discrepancies in the various versions of his conversation with Key given to other people.

Under the evidence presented and in light of the jury's request for clarification on the element of deliberation, the jury, if it had been correctly instructed, could have found that the prosecution failed to prove beyond a reasonable doubt that the defendant killed the victim after deliberation. *See Chapman*, 386 U.S. at 25–26, 87 S.Ct. at 828–829 ("And though the case ... presented a reasonably strong 'circumstantial web of evidence' against petitioners, ... it was also a case in which, absent the constitutionally forbidden comments, honest, fairminded jurors might very well have brought in not-guilty verdicts."). By giving the *Van Houton* definition of "after deliberation," the trial court presented the jury with irreconcilable statements concerning that element of first-degree murder. "A conviction cannot be permitted to rest on such an equivocal direction to the jury on one of the basic elements of the crime." *People v. Riley*, 708 P.2d at 1366. In view of the significance of this element to the crime charged, the court's error was not harmless beyond a reasonable doubt. *See id.*

In *Francis v. Franklin*, 105 S.Ct. at 1976 n.8, the Supreme Court concluded that the appropriate remedy in such a case was to set aside the guilty verdict. It stated:

The Court today holds that contradictory instructions as to intent ... create a reasonable likelihood that a juror understood the instructions in an unconstitutional manner, unless other language in the charge *explains* the infirm language sufficiently to eliminate this possibility. If such a reasonable possibility of an unconstitutional understanding exists, "we have no way of knowing that [the defendant] was not convicted on the basis of the unconstitutional instruction." *Sandstrom [v. Montana]*, 442 U.S. [510] at 526 [99 S.Ct. 2450, 2460, 61 L.Ed.2d 39]. For this reason, it has been settled law since *Stromberg v. California*, 283 U.S. 359 [51 S.Ct. 532, 75 L.Ed. 1117] (1931), that when there exists a reasonable possibility that the jury relied on an unconstitutional understanding of the law in reaching a guilty verdict, that verdict must be set aside. *See Leary v. United States*, 395 U.S. 6, 31–32 [89 S.Ct. 1532, 1545–1546, 23 L.Ed.2d 57] (1969); *Bachellor v. Maryland*, 397 U.S. 564, 571 [90 S.Ct. 1312, 1316, 25 L.Ed.2d 570] (1970).

(Parallel citations omitted.) (Emphasis in original.)

Finally, the conclusion implicit in the majority opinion is that the trial court erred in instructing the jury on the lesser included offenses of second-degree murder and voluntary manslaughter.[5] The majority de-

---

5. The elements of second-degree murder and manslaughter were enumerated in Instruction No. 16, which stated:

scribes the brutality of the killing in great detail and concludes that the evidence of deliberation was overwhelming. However, a properly instructed jury could have found that very evidence to be inconsistent with a homicide committed after reflection and judgment. If there is any evidence whatever which tends to support a conviction on a lesser included charge, the court is required to so instruct the jury, no matter how slight or unpersuasive that evidence may be. *People v. Jones,* 711 P.2d 1270 (Colo.1986); *People v. Shaw,* 646 P.2d 375 (Colo.1982). Since the jury was properly instructed on the lesser included offenses, I am totally unpersuaded that a constitutionally deficient instruction on the critical element of intent in a first-degree murder case can be characterized as harmless error beyond a reasonable doubt.

Accordingly, I would reverse the judgment and remand to the court of appeals with instructions to vacate the conviction and remand the case to the district court for a new trial.

I am authorized to say that Chief Justice QUINN and Justice LOHR join me in this dissent.

A person commits the crime of Murder in the Second Degree if:

He causes the death of a person knowingly, but not after deliberation.

The elements of Murder in the Second Degree are therefore:

(1) Knowingly, but not after deliberation,

(2) Causing the death of a person.

A person commits the crime of Manslaughter if:

He knowingly causes the death of another person under circumstances where the act causing the death was performed, not after deliberation, upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person killing sufficiently to excite an irresistable passion in a reasonable person; but if between the provcation and the killing there is an interval sufficient for the voice of reason and humanity to be heard, the killing is murder.

The elements of Manslaughter are therefore:

(1) Knowingly

(2) Causing the death of another

(3) Under circumstances where the act causing the death was performed:

(a) Not after deliberation

(b) Upon a sudden heat of passion

(c) Caused by a serious and highly provoking act of the intended victim, and

(d) Affecting the person killing sufficiently to excite an irresistable passion in a reasonable person.

(4) But if between the provocation and the killing there is an interval sufficient for the voice of reason and humanity to be heard, the killing is murder.