Ezamika BROWN, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 09SC680.

Supreme Court of Colorado,
En Banc.

Sept. 20, 2010.

Douglas K. Wilson, Public Defender, Rebecca Freyre, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Christopher Bosch, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

The petitioner Ezamika Brown appeals his conviction for attempted first degree murder, arguing that the trial court reversibly erred when it denied his request for jury instructions on a lesser included offense and a related partial defense. The trial court ruled that a criminal defendant who maintains his innocence at trial is automatically barred from seeking instructions inconsistent with that theory of defense. The court of appeals rejected the lower court's reasoning, determining that section 18–1–408(6), C.R.S. (2009), enables a criminal defendant to seek an inconsistent jury instruction for which there is a rational basis in the evidence. Because the court of appeals found that there was no rational basis for either instruction, it held that the trial court's error was harmless. We affirm.

## I. Facts and Proceedings Below

Brown and the victim, Jeanette Gabaldon, were engaged in a romantic relationship when Brown allegedly shot her three times at close range. Although the parties dispute many of the particulars regarding their relationship and the shooting that ended it, they agree that they lived together in Gabaldon's apartment in Denver for approximately one year. During that time, Brown supported himself by selling cocaine and crack cocaine. Gabaldon knew of Brown's occupation and allowed him to store the tools of his trade— cocaine, various drug paraphernalia, a hand gun, and ammunition—in her apartment.

Gabaldon testified that on the night of October 8, 2005, she discovered condoms and a set of hotel keys in Brown's jacket pocket, leading to a heated exchange, during which Brown and Gabaldon accused one another of infidelity. Once this initial romantic turbulence subsided, Brown and Gabaldon decided to take a pill of ecstasy and drive Gabaldon's car to a pool hall in downtown Denver. En route, the couple stopped at a liquor store and purchased a bottle of vodka, which Brown left unopened in the car when they arrived at the pool hall. Brown, Gabaldon, and several acquaintances began drinking and shooting pool. After several drinks,

Brown revealed to a male acquaintance that he had, in fact, been unfaithful to Gabaldon. Gabaldon overheard their conversation, became irate, and demanded Brown return the keys to her car and to her apartment. Brown informed Gabaldon that, "[i]f you take your keys, this is [the] last time [that] you take them from me." Gabaldon took the keys, and she and a female acquaintance exited the pool hall. Brown chased them outside and demanded that Gabaldon return the bottle of vodka. She gave him the bottle and left.

Gabaldon further testified that, on the morning of October 9, 2005, Brown—lacking keys or other means of entering Gabaldon's locked apartment—climbed onto a third-story balcony and entered through an unlocked sliding glass door. Gabaldon awoke to the sound of the door opening and soon found Brown in her bedroom. He stated, "[s]o you thought you would be safe here by yourself," smashed her cell phone, and hurled the broken remains off the balcony. Brown then walked into the adjacent living room and began rummaging through the couch and entertainment center—places where, Gabaldon knew, he routinely stored drugs, money, and his hand gun. Brown soon returned, brandishing the weapon. Gabaldon told him, "I did nothing to you, Ezamika, I said nothing to you." Brown responded by firing a shot inches away from her ear before shooting her in the hand, arm, and abdomen. Afterward, he fled.

Brown maintains that he never went to Gabaldon's apartment the morning of October 9, 2005. At trial, he testified that he left the pool hall and took a bus to a second bar, where he sold cocaine to a regular customer. Brown then took a cab to a motel near Gabaldon's apartment, where, as he had on several prior occasions, he checked in using a false name. Once in his room, he consumed most of the bottle of vodka, became sick from excessive drinking, and passed out.

Brown testified that he woke up at the motel the next morning and took a taxi to the Denver bus station. Shortly after 9:00 a.m.,

he purchased a one-way bus ticket to New York under a false name. After spending the day drinking and watching football, Brown boarded his bus at 6:00 p.m.[1] During a scheduled stop in Iowa, local authorities removed Brown from the bus and placed him under arrest.

Brown was charged with attempted first degree murder. Throughout the ensuing trial, Brown steadfastly maintained his innocence:

Q: Did you ever go to [Gabaldon's apartment] on October 9th, 2005?

A: No, not at all.

Q: Did you ever climb up that balcony?

A: No, not at all.

Q: Did you shoot Jeanette Gabaldon?

A: No, not at all.

But prior to jury deliberation, Brown, via defense counsel, requested a jury instruction on the lesser included offense of attempted second degree murder as well as a related instruction on voluntary intoxication. Because Brown testified that he was innocent of all charges, the trial court ruled that he was automatically barred from seeking instructions inconsistent with that theory of defense. The jury convicted Brown as charged.

After distinguishing our opinion in *People v. Garcia*, 826 P.2d 1259 (Colo.1992) (holding that a defendant who testifies that he is innocent may not seek a conflicting jury instruction on a lesser non-included offense based on an earlier, sworn statement), the court of appeals held that section 18–1–408(6) allows a defendant who maintains his innocence to seek a jury instruction on a lesser included offense or a related partial defense provided that the law and facts reasonably support its issuance. However, because the record was devoid of evidence—other than Brown's own testimony—supporting either instruction, the court of appeals affirmed his conviction.

---

1. Brown testified that, were he trying to escape capture, he would have taken an earlier bus, which departed at 11:00 a.m.

## II. Standard of Review

 A trial court's failure to provide a jury instruction after a defendant requests such instruction will be reviewed under the harmless error standard. *See Mata–Medina v. People,* 71 P.3d 973, 980 (Colo.2003). Applying this standard, reversal is warranted only if the error affected the defendant's substantial rights. Crim. P. 52(a). An error that fails to impact a defendant's substantial rights must be disregarded unless there is "a reasonable probability that it contributed to the defendant's conviction." *Mata–Medina,* 71 P.3d at 980 (citing *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001)).

## III. Formulation of the Rule

### A. The Statutory Test

 As a preliminary manner, we must determine whether attempted second degree murder is a lesser included offense of attempted first degree murder. In so doing, we apply the statutory test, which mandates that "the greater offense must establish every essential element of the lesser included offense." *People v. Rivera,* 186 Colo. 24, 27, 525 P.2d 431, 433 (1974) (citing *Daniels v. People,* 159 Colo. 190, 193, 411 P.2d 316, 317 (1966)). To secure a conviction for the crime of attempt, the People must prove beyond a reasonable doubt that the defendant possessed the culpable mental state required for the underlying offense and that the defendant took a substantial step toward completing the underlying offense. *See* § 18–2–101, C.R.S. (2009). Here, the underlying offenses—first degree murder and second degree murder—vary only in the culpable mental state required. *Compare* § 18–3–102(1)(a), C.R.S. (2009) (first degree murder requires causing death of another "[a]fter deliberation and with ... intent") *with* § 18–3–103(1), C.R.S. (2009) (second degree murder requires "knowingly" causing death of another). Under Colorado law, the requirement that a defendant act knowingly is also satisfied where a defendant satisfies the more-exacting "intentional" standard. § 18–1–503(3), C.R.S. (2009) ("If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally."). As proof of attempted first degree murder necessarily establishes every element of attempted second degree murder, the latter is a lesser included offense of the former.

### B. Lesser Included Offense

 Next, we consider whether, and under what circumstances, a trial court may order a jury instruction on a lesser included offense where the instruction is inconsistent with a defendant's claim of innocence. In so deciding, we are mindful of the general principle that "a theory of the case instruction which permits the jury to find a defendant innocent of the principal charge and guilty of a lesser charge should be given when warranted by the evidence." *Rivera,* 186 Colo. at 28, 525 P.2d at 434; *see also Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."). Nevertheless, a defendant's right to a lesser included offense instruction is not absolute.

In *Garcia,* the defendant was charged with first degree murder of the victim, his live-in girlfriend. 826 P.2d at 1260. The defendant maintained his innocence throughout the trial, claiming that the victim was stabbed by a third-party intruder. *Id.* at 1261. Then, just prior to deliberation, the defendant sought a heat-of-passion instruction based on a sworn statement he made to police before trial—that he accidentally stabbed the victim when she interrupted a suicide attempt—which he later testified was untrue. *Id.* at 1262. We affirmed the lower court's decision to refuse the instruction, holding that a defendant "cannot claim that an intruder stabbed [the victim] and at the same time obtain an instruction based on the theory that he stabbed [the victim] in the heat of passion." *Id.* at 1263–64.

Our holding was informed by a similarly situated case decided by the Oklahoma Court of Criminal Appeals. *Id.* (citing *Spuehler v. State,* 709 P.2d 202 (Okla.Crim.App.1985)). In *Spuehler,* the defendant claimed a third party killed the victim but then, prior to deliberation, the defendant requested an in-

consistent instruction on the heat of passion defense. 709 P.2d at 204. The *Spuehler* court held that the defendant was automatically barred from raising an inconsistent defense, reasoning that "[w]hen a defendant, who has a right of election as to several defenses, takes the stand as a witness and makes such admissions as to render every theory of defense unavailable save one, he will be deemed to have elected that one." *Id.* (quoting *Seegars v. State,* 655 P.2d 563, 565 (Okla.Crim.App.1982); *Jones v. State,* 555 P.2d 1061, 1070 (Okla.Crim.App.1976)).

The People argue that *Garcia,* like *Spuehler,* stands for the proposition that a trial court is automatically barred from issuing a jury instruction on a lesser included offense that is inconsistent with a defendant's claim of innocence. We disagree. Our holding in *Garcia* turned not on the inconsistency of the requested instruction, but on the inconsistency of the defendant's sworn testimony. *Garcia,* 826 P.2d at 1263 (holding that the defendant "cannot rely on a statement that he has, under oath, declared to be false in order to obtain a heat of passion manslaughter instruction"). Noting that the defendant's judicial admissions were "conclusive," we held that he could not rely on his earlier statement to request a heat of passion instruction. *Id.* (quoting *Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo.1986)). As the defendant failed to produce any other evidence in support of the instruction, his request was properly denied. *Id.; see also Rivera,* 186 Colo. at 28, 525 P.2d at 434.

Further distinguishing *Garcia* and *Spuehler* is the fact that both cases considered an inconsistent jury instruction on a lesser *non-included* offense. Because the legal question in *Garcia* had not been considered previously by the General Assembly, we fashioned an appropriate judicial remedy. Here, on the other hand, the General Assembly has made its intentions plain: "The court shall not be obligated to charge the jury with respect to

an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 18–1–408(6).[2] As the statutory scheme established by the General Assembly expressly precludes an automatic bar, we will not erect one here. *See Common Sense Alliance v. Davidson,* 995 P.2d 748, 755 (Colo.2000) (holding that this court "must resist the temptation to change the statutory language, and ... leave any repair to the General Assembly").

Moreover, the prevailing policy concerns which helped shape our opinion in *Garcia* are absent in the present case.

> [W]hen a party testifies to facts in regard to which he has special knowledge ... the possibility that he may be honestly mistaken disappears. His testimony must be either true or deliberately false. To allow him to contradict his own testimony under these circumstances would not be "consistent with honesty and good faith." Whether his statements be true or false, he will be bound by them.... He will not be allowed to obtain a judgment based on a finding that he has perjured himself.

*Garcia,* 826 P.2d at 1263 (quoting *Harlow v. Laclair,* 82 N.H. 506, 136 A. 128, 130 (1927)); *see also United States v. Hill,* 196 F.3d 806, 808–09 (7th Cir.1999) (rejecting an inconsistent jury instruction because it would "encourage perjury"). Brown consistently maintained his innocence during the initial police investigation and afterward at trial. In addition, defense counsel requested an instruction on attempted second degree murder without eliciting any contrary testimony from Brown. Under these circumstances, we are satisfied that the principal policy arguments for denying Brown a lesser included offense instruction—that allowing an inconsistent instruction would be contrary to "honesty and

---

2. In this respect, Colorado law is consistent with federal practice, *see, e.g.,* Fed.R.Crim.P. 31(c)(1) ("A defendant may be found guilty of any of the following ... an offense necessarily included in the offense charged...."); Fed.R.Civ.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."), and the majority of federal precedent, *see, e.g.,*

*Mathews,* 485 U.S. at 63, 108 S.Ct. 883; *Stevenson v. United States,* 162 U.S. 313, 315, 16 S.Ct. 839, 40 L.Ed. 980 (1896); *United States v. Trujillo,* 390 F.3d 1267, 1275 (10th Cir.2004); *United States v. Goldson,* 954 F.2d 51, 55 (2d Cir.1992); *Arcoren v. United States,* 929 F.2d 1235, 1245 (8th Cir.1991); *United States v. Browner,* 889 F.2d 549, 555 (5th Cir.1989).

good faith" and/or encourage perjury—are substantially mitigated.[3]

While our holding here allows a trial court to issue an inconsistent jury instruction on a lesser included offense, it does not compel it to do so. Rather, a trial court must determine whether a rational basis for the requested instruction exists in the evidentiary record before granting or denying such instruction. *See Apodaca v. People*, 712 P.2d 467, 469, 474 (Colo.1985) (citing section 18–1–408(6) to hold that "because there was no rational basis in the evidence for the jury to acquit the defendant of the completed crime ... and still convict him of the lesser included offense ..., the trial court properly refused to instruct on the lesser included offense").

■ For the foregoing reasons, we hold that a criminal defendant who maintains his innocence throughout a trial may nevertheless receive an inconsistent jury instruction on a lesser included offense provided there is a rational basis for the instruction in the evidentiary record.

## C. Voluntary Intoxication

■ Finally, we consider whether a defendant is entitled to a voluntary intoxication instruction where the instruction is inconsistent with the defendant's claim of innocence. Again, we begin with the general proposition that "[w]here the evidence supports an intoxication defense, it is appropriate for a trial court to instruct on that defense." *People v. Mattas*, 645 P.2d 254, 259 (Colo.1982) (citing *People v. Lundborg*, 39 Colo.App. 498, 499, 570 P.2d 1303, 1304 (1977)); *cf. Mathews*, 485 U.S. at 63, 108 S.Ct. 883 ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.").

■ Under Colorado law,

[i]ntoxication of the accused is not a defense to a criminal charge, ... but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant when it is relevant to negative the existence of a specific intent if such intent is an element of the crime charged.

§ 18–1–804, C.R.S. (2009). We have held that voluntary intoxication is not an affirmative defense completely absolving a defendant of criminal liability; rather, it is a partial defense that, under appropriate circumstances, negates the specific intent necessary to carry out certain offenses. *People v. Harlan*, 8 P.3d 448, 471 (Colo.2000), *overruled on other grounds by People v. Miller*, 113 P.3d 743 (Colo.2005). Therefore, a criminal defendant who successfully introduces evidence of voluntary intoxication may circumvent conviction for a more serious specific intent crime while remaining liable for a lesser included general intent offense.

Here, defense counsel sought a voluntary intoxication instruction which, while legally distinct from a lesser included offense instruction, serves substantially the same purpose under the law and facts of this case. If accepted by a jury, a voluntary intoxication defense would relieve Brown of liability for the specific intent crime of attempted first degree murder and result in conviction for the general intent crime—and lesser included offense—of attempted second degree murder. What is more, our prior decisions are not insensitive to section 18–1–408(6)'s requirement that a jury instruction possess a rational basis in the evidence. Indeed, the standard we apply to voluntary intoxication instructions—that they be issued whenever "*the evidence* supports an intoxication defense"—closely mirrors that for lesser included offenses. *Mattas*, 645 P.2d at 259 (emphasis added).

---

**3.** The U.S. Supreme Court reached the same conclusion in *Mathews:*

We do not think that allowing inconsistency necessarily sanctions perjury. Here petitioner wished to testify that he had no intent to commit the crime, and have his attorney argue to the jury that if it concluded otherwise, then it should consider whether that intent was the result of Government inducement. *The jury would have considered inconsistent defenses, but petitioner would not have necessarily testified untruthfully.*

485 U.S. at 65, 108 S.Ct. 883 (emphasis added).

■ Therefore, we hold that a criminal defendant who maintains his innocence may receive an inconsistent jury instruction on voluntary intoxication provided there is a rational basis for the instruction in the evidentiary record.

## IV. Examination of the Record

Under the rules set forth in Section III, *supra,* we need only consider two possibilities: (1) whether, as the court of appeals concluded, the record cannot but support the conclusion that Brown shot Gabaldon in a deliberate and premeditated fashion; or (2) whether the record could rationally support a conclusion that Brown acted in a less culpable manner.

### A. Lesser Included Offense

■ Defense counsel argues that sufficient evidence exists that Brown's actions were neither deliberate nor premeditated. To wit: Brown deliberately fired the first shot past Gabaldon's ear and, although he did strike her body with subsequent shots, never aimed a bullet directly at her head. We cannot accept an explanation that strains credulity to this degree.

It is undisputed that Brown and Gabaldon quarreled on two occasions the night before the shooting, resulting in Gabaldon's decision to end their romantic relationship and kick Brown out of her apartment. Several hours later, Brown broke into Gabaldon's apartment, smashed her cell phone, and collected the possessions he left there—including a hand gun. A ballistics report showed that Brown's gun was fired once next to Gabaldon's head and three times into her body at close range. Afterward, Gabaldon was critically wounded and bleeding profusely. Brown did not attempt to call for help or even to exit through the front door. Rather, he left the apartment the way he came, climbing down from the third-story balcony.

Because there is insufficient evidence in the record to provide a rational basis for acquitting Brown of attempted first degree murder and convicting him of attempted second degree murder, we hold that the trial court did not err by refusing to issue a lesser included offense jury instruction.

### B. Voluntary Intoxication

We find the record equally devoid of credible evidence supporting a voluntary intoxication instruction.

It is undisputed that, the evening before the shooting, Brown took one pill of ecstasy and later consumed several drinks at the pool hall. Brown further testified that he consumed an entire bottle of vodka the night before the shooting, causing him to become so intoxicated that he became sick and passed out. In support of this testimony, Brown stated that his brother, who Brown allegedly telephoned from the motel, and the employee who checked him into the motel were aware that he was extremely intoxicated. However, neither his brother nor any motel employee who was physically present that night testified.

■ Because there was ample time for Brown to recover from the ecstasy and pool hall drinks he consumed earlier in the evening and because the only evidence demonstrating that he continued to drink from the bottle of vodka is Brown's own uncorroborated testimony, we hold that there is insufficient evidence for a voluntary intoxication instruction to issue.

## V. Conclusion

We hold that a criminal defendant who maintains his innocence at trial is not automatically barred from seeking jury instructions on a lesser included offense or on a related, voluntary intoxication defense. Rather, these jury instructions remain available provided that there is a rational basis for them in the evidence. Because the evidence on record here cannot support either of the requested instructions, we affirm the court of appeals' judgment.

Justice COATS concurs in the judgment only, and Justice EID joins in the concurrence.

Justice COATS, concurring in the judgment only.

Although I too would affirm the judgment of the court of appeals, I agree with neither

the majority's understanding of the controlling legal standards nor its assessment of the evidence. Unlike the majority, I believe it cannot be fairly said that the instructions requested by the defendant in this case were unsupported by the evidence. Also unlike the majority, however, I think it clear that the defendant was not entitled to have the jury instructed on a theory directly contravening his express testimony at trial. Finally, I feel compelled to note that if the evidence were, as the majority concludes, actually insufficient to support the defense-requested instructions, that portion of its opinion substantially limiting our holding in *People v. Garcia*, 826 P.2d 1259 (Colo.1992), would be unnecessary to resolution of the case and would therefore amount to nothing more than dicta. Because I agree that the defendant was not entitled to his requested instructions but disagree with both of the majority's alternate rationales for concluding as much, I concur only in its judgment affirming the court of appeals.

Initially, I believe the majority conflates several different types of instructions to which a defendant may be entitled, and as a result of that imprecision, at least in part, it evaluates the defendant's requests according to an overly burdensome standard. Depending upon their nature and purpose, we have categorized instructions to which a criminal defendant can become entitled differently, using somewhat different formulae to describe their evidentiary prerequisites.

We have, for example, made abundantly clear that a defendant is entitled to have the jury apprised of his theory of the case as long as there is *any* evidence to support it, even if that theory is highly improbable and finds support only in the testimony of the defendant himself. *People v. Nunez*, 841 P.2d 261, 264–65 (Colo.1992). Presenting the jury with a defendant's explanation of the evidence is considered so integral to his right to present a defense that we have required trial courts to help craft proper theory-of-the-case instructions rather than simply reject ones they consider improper. *People v. Moya*, 182 Colo. 290, 292–93, 512 P.2d 1155, 1156 (1973). An instruction setting forth the statutory elements of either a crime or defense, however, is clearly different from and cannot take the place of a defendant's theory of the case instruction. *Nunez*, 841 P.2d at 265.

While a defendant's theory of the case may be that he has committed nothing more than some lesser offense and therefore must be acquitted of the charges actually brought against him, any entitlement he may have to present the jury with an option to convict him of an offense less serious than the one actually charged is governed by different considerations. Charging decisions are generally reserved to the discretion of the prosecuting authority. *People v. District Court*, 632 P.2d 1022, 1024 (Colo.1981). Because a criminal defendant has effectively been put on notice that he will be required to defend against any offense the elements of which are included in a charged offense, and because he will be permitted to plead former jeopardy as a bar to subsequent prosecution for such an offense in any event, prosecutors are liberally permitted to have juries instructed and return verdicts on lesser included offenses. *See People v. Garcia*, 940 P.2d 357, 362–63 (Colo.1997); *People v. Barger*, 191 Colo. 152, 154, 550 P.2d 1281, 1282–83 (1976); *People v. Cooke*, 186 Colo. 44, 48, 525 P.2d 426, 428–29 (1974). By the same token, because defendants have, in effect, already been required to defend against an included offense and because it is generally considered desirable to forestall compromise verdicts on charged offenses for want of more suitable options, defendants are also permitted to have the jury instructed on lesser included offenses, *see People v. Rivera*, 186 Colo. 24, 28–29, 525 P.2d 431, 434 (1974), at least where the evidence presented at trial would permit a reasonable jury to acquit of a charged offense and still convict of a lesser included offense. *See People v. Futamata*, 140 Colo. 233, 241, 343 P.2d 1058, 1062 (1959); *cf.* § 18–1–408(6), C.R.S. (2009).

Although lesser offenses, all the elements of which are not included in a charged offense, may also find support in the evidence at trial, they cannot be similarly said to have been the object of the prosecutor's proof. Largely for this reason, criminal defendants in many jurisdictions are not entitled to in-

structions on lesser nonincluded offenses. *See, e.g., Hopkins v. Reeves,* 524 U.S. 88, 99, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998) (commenting that permitting jury to convict of offense the prosecution did not even try to prove "can hardly be said to be a reliable result"); *People v. Birks,* 19 Cal.4th 108, 136, 77 Cal.Rptr.2d 848, 960 P.2d 1073 (1998) (overruling prior allowance of lesser nonincluded offense instructions requested by defense). In this jurisdiction, however, we long ago decided to put lesser nonincluded offenses on a par with lesser included offenses, entitling defendants to present juries with the option of convicting of a lesser offense, whether included or not, whenever it is the defendant's theory that he merely committed the lesser offense and an instruction of the lesser offense is warranted by the evidence. *Rivera,* 186 Colo. at 28, 525 P.2d at 434. Almost immediately thereafter, we made clear that lesser nonincluded offenses are warranted and may be submitted to the jury under a theory of the case instruction *only* if the "jury reasonably could acquit the defendant of the offense charged and simultaneously find him guilty of the lesser nonincluded offense." *People v. Aragon,* 653 P.2d 715, 720 n. 5 (1982).

As a special case of (or perhaps exception to) this rational basis formula, we have expressed a particular preference for jury determinations of the appropriate "grade of criminal homicide" by entitling defendants to lesser offense instructions in homicide prosecutions whenever there is "some evidence, however slight," *People v. Shaw,* 646 P.2d 375, 379 (Colo.1982), or "any evidence whatever," *Crawford v. People,* 12 Colo. 290, 292, 20 P. 769, 770 (1889), "regardless of how 'improbable, unreasonable, or slight' it might be." *Mata–Medina v. People,* 71 P.3d 973, 979 (Colo.2003) (quoting *Garcia,* 826 P.2d at 1262). Although we have never attempted to explain more precisely the relationship between this standard for lesser homicide offenses and the statutory rational basis test, the former is clearly intended to be more deferential to jury determinations. Whatever the rationale for this deference, in light of this jurisdiction's recognition of attempts to commit lesser homicide offenses, *see People v. Thomas,* 729 P.2d 972 (Colo.1986) (recog-

nizing crime of attempted reckless homicide); *People v. Krovarz,* 697 P.2d 378 (Colo.1985) (recognizing crime of attempted second degree murder), it is less than clear why the same deferential standard should not apply to them.

Similarly, a defendant has adequately raised and is entitled to an instruction defining an affirmative defense as long as there is some credible evidence to support it. *See* § 18–1–407(1), C.R.S. (2009); *Cassels v. People,* 92 P.3d 951, 955 (Colo.2004). Although a particular defense may be more in the nature of a traverse than a true affirmative defense, *see People v. Huckleberry,* 768 P.2d 1235, 1238 (Colo.1989), and therefore the defendant may not be entitled to an instruction requiring that it be separately disproved by the prosecution, a criminal defendant is nevertheless entitled to have his theory of traverse presented by instruction if there is any evidence, no matter how slight or improbable, to support it. *Nunez,* 841 P.2d at 266 (although alibi is not an affirmative defense, defendant was entitled to instruction that his theory of the defense was alibi). Because a trial court always has an obligation to ensure that the jury is properly instructed as to the applicable law, *Cassels,* 92 P.3d at 955, and because voluntary intoxication can traverse a specific intent element, § 18–1–804(1), C.R.S. (2009), a defendant charged with a specific intent crime meets the evidentiary prerequisite for a voluntary intoxication instruction whenever there is any evidence, however improbable, supporting it.

In this case the victim herself testified that the defendant stored crack cocaine at her apartment and on the night of the shooting took ecstasy, had several drinks in her presence, and demanded that she hand over an unopened bottle of vodka as they parted. Although he denied ever coming back to the victim's apartment or shooting her, the defendant further testified that he went to another bar before returning to his motel room, where he drank most of the bottle of vodka. The jury therefore heard uncontradicted testimony that the defendant had been drinking and taking illegal, mind-altering substances earlier that night and that he insisted on taking with him a bottle of vodka, which the

jury could believe he drank that same night. Because it was for the jury to decide whether to believe any of the defendant's testimony, and if so, precisely how much and which parts of his testimony to believe, I would find a rational basis in the record to convict him of attempted second, rather than first, degree murder. Whether or not the more deferential standard for homicide offenses should apply equally to attempted homicides, there was clearly "some evidence" to support both an instruction on voluntary intoxication and an instruction (even if not offered in proper form) explaining to the jury the defendant's intoxication theory.

I believe, as did the trial court, that the defendant's requested instructions were nevertheless properly denied because a criminal defendant is not entitled to an instruction based on a theory requiring the jury to reject a binding judicial admission, made under oath at trial by the defendant himself. *Garcia*, 826 P.2d at 1263–64. We have never suggested, and the majority does not now suggest, any logical distinction between included and nonincluded offenses making this proposition applicable to the latter but not the former category of instructions, and there clearly can be none. Instead, the majority finds, in a statute limiting a defendant's right to lesser included offense instructions, a legislative intent to require trial courts to give such instructions without regard to contradictory binding judicial admissions. *See* § 18–1–408(6).

On its face, the statute in question specifies a circumstance in which courts "shall not be obligated to charge the jury with respect to an included offense," as distinguished from the circumstances in which it *shall be* obligated do so. *Id.* In any event, however, the legislature's extension of rights to criminal defendants cannot reasonably be understood, without more, to suggest that these defendants cannot, by their own conduct, forfeit, waive, or be estopped from asserting those rights. Section 18–1–408(6) notwithstanding, it is manifest that a trial court is not obliged to charge a jury with respect to an included offense in the absence of a timely and proper request to do so. I understand the majority's expansive interpretation of this peripherally relevant statute as having the effect of substantially limiting our holding in *Garcia* without having to justify its rejection.

Although I believe it strains credulity to deny that the record as a whole contains evidence supporting the defendant's requested instructions, I would nevertheless continue to hold that a defendant is not entitled to solicit through jury instructions his conviction of a less serious offense in direct contravention of his testimony at trial. I therefore concur only in the court's judgment affirming the court of appeals.

I am authorized to state that Justice EID joins in this concurrence in the judgment only.