The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
Date, February 13, 2020

**2020COA23**

**No. 15CA2076, *Peo v Stone* — Criminal Law — Provisions
Applicable to Offenses Generally — Intoxication**

Section 18-1-804(1), C.R.S. 2019, states that "[i]ntoxication of
the accused is not a defense to a criminal charge . . . ."  This
opinion of a division of the court of appeals addresses, for the first
time in a published opinion in Colorado, the contention that this
statutory subsection is unconstitutional because it bars the
defendant from presenting evidence of voluntary intoxication to
contest his guilt in a trial involving only general intent crimes.

COLORADO COURT OF APPEALS 2020COA23

Court of Appeals No. 15CA2076
Douglas County District Court No. 14CR154
Honorable Paul A. King, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ryan Cole Stone,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by CHIEF JUDGE BERNARD
Taubman and Navarro, JJ., concur

Announced February 13, 2020

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jud Lohnes, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 "Qui peccat ebrius, luat sobrius" means "[h]e who offends while drunk suffers punishment when sober." Ballentine's Law Dictionary 1043 (3d ed. 1969). This venerable Latin legal maxim is expressed in Colorado in section 18-1-804(1), C.R.S. 2019, which states that "[i]ntoxication of the accused is not a defense to a criminal charge . . . ."

¶ 2 There is an express exception to this general rule, which is found in section 18-1-804(3): involuntary intoxication *is* an affirmative defense to a criminal charge. As an affirmative defense, involuntary intoxication does not "simply challenge the existence of an element of the offense, but [it] seek[s] to justify or mitigate the entire crime, and [is] therefore [a] complete defense[]." *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

¶ 3 As is pertinent to our discussion, section 18-1-804(1), which we will shorten to "subsection (1)" for the rest of this opinion, does two other things.

¶ 4 First, subsection (1) states that a defendant may introduce evidence of voluntary, self-induced intoxication to "negative the existence" of specific intent. § 18-1-804(1). But such evidence does not create an affirmative defense. *Miller*, 113 P.3d at 750. Rather,

1

this evidence only challenges the existence of an element of the crime, i.e., specific intent. *See id.* As a result, the introduction of such evidence establishes only a partial defense. *See Brown v. People*, 239 P.3d 764, 769 (Colo. 2010). "[V]oluntary intoxication is not a true element-negating defense because it is possible for an intoxicated person to form specific intent." *People v. Lara*, 224 P.3d 388, 394 n.4 (Colo. App. 2009), *overruled on other grounds by People v. Pickering*, 276 P.3d 553 (Colo. 2011).

¶ 5     Second, by expressing the general rule that intoxication is not a defense to a criminal charge, subsection (1) makes clear that voluntary intoxication is *not* a defense to general intent crimes. *People v. Vigil*, 127 P.3d 916, 930-31 (Colo. 2006). To phrase this concept differently, evidence of voluntary intoxication "is incompetent as a defense to general intent crimes," *People v. Low*, 732 P.2d 622, 628 (Colo. 1987), and "[i]t is the settled law of [Colorado] that evidence of self-induced intoxication is not admissible to negate the culpability element of 'knowingly,'" *People v. Aragon*, 653 P.2d 715, 719 (Colo. 1982).

¶ 6     The rationale for barring defendants from introducing evidence of voluntary, self-induced intoxication to negate general intent

arises from a recognition that "voluntary impairment of one's mental faculties with knowledge that the resulting condition is a source of potential danger to others" involves "moral blameworthiness." *Hendershott v. People*, 653 P.2d 385, 396 (Colo. 1982). Indeed, "[i]t is a matter of common knowledge that the excessive use of liquor or drugs impairs the perceptual, judgmental and volitional faculties of the user." *Id.*

¶ 7    Subsection (1)'s distinction between specific intent and general intent crimes is not new. In fact, in 1906, our supreme court observed that the common law "uniformly held that drunkenness is not an excuse for crime." *Brennan v. People*, 37 Colo. 256, 261, 86 P. 79, 81 (1906). But, if the mental state for a crime was "willful, deliberate, and premeditated," evidence of intoxication was "a material and necessary subject of consideration by the jury whether the accused [was] in such condition of mind by reason of drunkenness . . . to be capable of deliberation and premeditation." *Id.* at 262, 86 P. at 81.

¶ 8    In the course of appealing a judgment of conviction, defendant, Ryan Cole Stone, submits that subsection (1) is unconstitutional. He says that it violates his due process rights

3

because it is "an evidentiary rule" that prohibited him "from presenting reliable and relevant evidence to contest his guilt," and that it is unconstitutional as applied because it "preclude[d]" him from introducing evidence of voluntary intoxication where general intent crimes are charged." He adds that the trial court should not have instructed the jury that voluntary intoxication was not a defense to these general intent crimes. We disagree with both contentions, so we affirm. (In a separate appeal, we address defendant's contentions concerning a restitution order. *See People v. Stone*, 2020COA24.)

## I. Background

¶ 9 A group of firefighters found defendant wandering the streets and agreed to give him a ride. He asked them to drop him off at a "warming" station. They instead let him out at a gas station.

¶ 10 Outside the gas station, he found a parked car. Its engine was running, and a four-year-old boy was in the back seat.

¶ 11 Defendant got in the car and drove it away. Police officers located the stolen car, and they followed it. After leading them on a high-speed chase, defendant abandoned the car. He commandeered a second car, and the chase continued.

4

¶ 12    The officers deployed "stop sticks" — sticks with spikes on them designed to puncture a car's tires to disable it — but defendant swerved around them, driving onto the shoulder of the road. In doing so, he hit an officer with the car, causing him serious injuries.

¶ 13    Defendant continued driving, eventually abandoning the second car and hijacking a third one. His subsequent attempt to steal a fourth car was thwarted, so he ran off. The officers finally caught up with him, and they arrested him.

¶ 14    The prosecution charged him with several general intent crimes. *See* § 18-1-501(6), C.R.S. 2019 (stating that offenses using "knowingly" are "general intent crimes"). The prosecution also charged him with theft, which contained an element of specific intent. § 18-1-501(5) (stating that offenses using "intentionally" and "with intent" are "specific intent offenses").

¶ 15    Before trial, defendant raised the defense of "voluntary intoxication," and he said that he would present the testimony of two expert witnesses. The prosecution asked the trial court to bar defendant from raising the voluntary intoxication defense.

¶ 16    At a motions hearing, defendant contended that he should be allowed to present "any information that tends to negate an element of the crime," including evidence of voluntary intoxication. The prosecutor asserted that subsection (1) prohibited him from using voluntary intoxication as a defense to a general intent crime.

¶ 17    The trial court agreed with the prosecutor. It concluded that, "[i]f there are no specific intent crimes listed, then the defense is not entitled to present any evidence as it relates to intoxication because it's simply not relevant." After this ruling, the prosecutor asked the court to dismiss a count of theft, the only specific intent crime that the prosecution had charged. The court granted the request.

¶ 18    Defendant asked the court to reconsider its ruling barring him from introducing evidence that he was intoxicated at the time of the crimes. He argued that the ruling violated his due process rights for reasons that we describe in more detail below. The court denied this request.

¶ 19    The jury convicted defendant of attempted manslaughter, first degree assault, vehicular eluding, criminal mischief, six counts of leaving the scene of an accident, two counts of robbery, two counts of child abuse, and three counts of aggravated motor vehicle theft.

## II.   Constitutionality of the Voluntary Intoxication Statute

¶ 20   Defendant contends that subsection (1) is unconstitutional because it (1) lightens the prosecution's burden to prove every element of a crime beyond a reasonable doubt; and (2) prevents a defendant from presenting a complete defense.  We disagree.

### A.   Standard of Review and General Legal Principles

¶ 21   Defendant's contention requires us to interpret section 18-1-804.  Our review is de novo.  *People v. Jenkins*, 2013 COA 76, ¶ 12.

¶ 22   When we interpret a statute, we must determine and effectuate the legislature's intent.  *Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 16.  "We construe the entire statutory scheme to give consistent, harmonious, and sensible effect to all [of its] parts," and "[w]e give effect to words and phrases according to their plain and ordinary meaning[s]."  *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011).  If a statute's language is clear, we apply it as written.  *Id.*

¶ 23   We also review de novo the constitutionality of a statute.  *Dean v. People*, 2016 CO 14, ¶ 8.  Because we presume a statute to be constitutional, the challenging party must prove that it is unconstitutional beyond a reasonable doubt.  *Id.*

## B. *Montana v. Egelhoff*

¶ 24 Relying on Montana v. Egelhoff, 518 U.S. 37 (1996), defendant asserts that subsection (1) is unconstitutional because it constitutes an evidentiary rule that prohibits a defendant from presenting relevant and exculpatory evidence. In *Egelhoff*, the prosecution charged the defendant with "deliberate homicide, a crime defined by Montana law as 'purposely' or 'knowingly' causing the death of another human being." *Id.* at 40 (opinion of Scalia, J.)(quoting Mont. Code Ann. § 45-5-102 (1995)). Montana's intoxication statute provides that "an intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense." Mont. Code Ann. § 45-2-203 (West 2019). The court at the defendant's trial allowed him to present evidence of his intoxication, but it instructed the jury on Montana's intoxication statute. *Egelhoff*, 518 U.S. at 41 (opinion of Scalia, J.). The jury convicted the defendant of deliberate homicide. *Id.*

¶ 25 The Montana Supreme Court reversed the conviction. *State v. Egelhoff*, 900 P.2d 260, 265 (Mont. 1995), *rev'd,* 518 U.S. 37. It

8

concluded that Montana's statutorily required instruction violated the due process clause because

- the instruction lessened the burden of proof by precluding the defendant from "presenting arguments concerning the prosecution's 'failure of proof' of the subjective mental state element required for conviction of a crime which includes the mental state of acting 'knowingly' or 'purposely[,]'" *id.* at 266; and

- "the defendant had a due process right to present and have considered by the jury all relevant evidence to rebut the State's evidence on all elements of the offense charged[,]" *id.*

¶ 26    The United States Supreme Court reversed the Montana Supreme Court in a fractured opinion.  For the purposes of our discussion, we focus on the four-justice plurality written by Justice Scalia, the opinion concurring in the judgment written by Justice Ginsburg, and a four-justice dissent.

¶ 27    Justice Ginsburg stood astride the rift zone between the plurality and the dissent, and she described their disagreement. She wrote that Montana's statute was, according to the plurality, a

"redefinition of the mental-state element of the offense," *Egelhoff*, 518 U.S. at 57 (Ginsburg, J., concurring in the judgment), or, according to the dissent, a rule that "removed from the jury's consideration a category of evidence relevant to determination of mental state where that mental state [was] an essential element of the offense that must be proved beyond a reasonable doubt[,]" *id.* at 61 (O'Connor, J., dissenting).

¶ 28 The resolution of this disagreement, Justice Ginsburg thought, depended on the answer to this fundamental question: "Can a State, without offense to the Federal Constitution, make the judgment that two people are equally culpable where one commits an act stone cold sober, and the other engages in the same conduct after his voluntary intoxication has reduced his capacity for self-control?" *Id.* at 57 (Ginsburg, J., concurring in the judgment). In the course of answering this question "yes," Justice Ginsburg decided that Montana's statute was, as the plurality had characterized it, a redefinition of the mental-state element of a crime.

¶ 29 Rejecting the dissent's position, Justice Ginsburg first decided that Montana's statute was not an evidentiary rule. *Id.* It did not

appear among the statutes listing evidentiary rules, but among the statutes addressing general principles of criminal liability, such as duress and entrapment. Such placement "embodie[d] a legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions." *Id.*

¶ 30 She next concluded that Montana's statute removed the issue of voluntary intoxication from the analysis of a defendant's mental state, "thereby rendering evidence of voluntary intoxication logically irrelevant to proof of the requisite mental state." *Id.* at 58. As a result, the statute did not lighten the prosecution's burden of proof because "[t]he applicability of the reasonable-doubt standard . . . has always been dependent on how a State defines the offense that is charged." *Id.* (quoting *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977)).

¶ 31 Third, statutory redefinitions of mental states in criminal cases "encounter[] no constitutional shoal" because "States enjoy wide latitude in defining the elements of criminal offenses, particularly when determining 'the extent to which moral culpability should be a prerequisite to conviction of a crime.'" *Id.* (citations omitted)(quoting *Powell v. Texas*, 392 U.S. 514, 545 (1968)(Black,

11

J., concurring)). Indeed, defining the culpable mental state "to eliminate the exculpatory value of voluntary intoxication does not offend a 'fundamental principle of justice,' given the lengthy common-law tradition, and the adherence of a significant minority of the States to that position today." *Id.* at 59 (Ginsburg, J., concurring in the judgment)(quoting *id.* at 43 (opinion of Scalia, J.)).

¶ 32    The reference to a "fundamental principle of justice" was a nod to the plurality opinion, which observed that the defendant's burden for establishing a due process violation was heavy. *Id.* at 43 (opinion of Scalia, J.). Because it is normally within a State's power to establish the procedures for enforcing its laws, the plurality wrote, statutes such as Montana's are "not subject to proscription under the Due Process Clause" unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* at 43 (quoting *Patterson*, 432 U.S. at 201-02).

¶ 33    Continuing its analysis, the plurality described the relevant traditions in England and in the United States, concluding that a "stern rejection of inebriation as a defense" had become fixed in American jurisprudence. *Id.* at 44. The plurality also recognized

12

the emergence of the exception in some states allowing juries to consider whether a defendant's inebriation negated specific intent. *Id.* at 46. But it nonetheless concluded that this trend was "of too recent vintage, and has not received sufficiently uniform and permanent allegiance, to qualify as fundamental, especially since it displaces a lengthy common-law tradition which remains supported by valid justifications today." *Id.* at 51.

¶ 34 And the plurality noted that the Due Process Clause does not give defendants an "unfettered right" to introduce relevant evidence. *Id.* at 42 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). For just two examples, procedural and evidentiary rules "authorize the exclusion of relevant evidence." *Id.*

¶ 35 Returning to Justice Ginsburg's opinion, she next pointed out that other states had upheld statutes like Montana's, "not simply as evidentiary rules, but as legislative redefinitions of the mental-state element." *Id.* at 59 (Ginsburg, J., concurring in the judgment). Circling back to the fundamental question that she raised at the beginning, Justice Ginsburg reasoned that, if it was within the power of Montana's legislature "to instruct courts to treat a sober person and a voluntarily intoxicated person as equally responsible

for conduct — to place a voluntarily intoxicated person on a level with a sober person" — then Montana's statute was "no less tenable under the Federal Constitution" than the laws upheld by these other states. *Id.* at 59-60.

¶ 36    Last, Justice Ginsburg concluded that the mistake made by the Montana Supreme Court was that it had not "undertake[n] an analysis in line with the principle that legislative enactments plainly capable of a constitutional construction ordinarily should be given that construction." *Id.* at 60.

C.    Discussion

¶ 37    Defendant asserts that Justice Ginsburg's concurrence in *Egelhoff* controls this case because our supreme court once characterized subsection (1) as "a rule concerning the admissibility of evidence of intoxication by the defendant to counter the prosecution's evidence that the defendant had the requisite specific intent of the charged offense." *People v. Harlan*, 8 P.3d 448, 471 (Colo. 2000), *overruled on other grounds by Miller*, 113 P.3d 743. If it is such an evidentiary rule instead of a redefinition of the mental state element of a crime, defendant continues, Justice Ginsburg's opinion concurring in the judgment, when combined with the

14

opinion of the four dissenters, renders subsection (1) unconstitutional. *See Verigan v. People*, 2018 CO 53, ¶ 31 (When the United States Supreme Court "issues a fractured opinion providing no clear holding, the holding 'may be viewed as that position taken by those [Justices] who concurred in the judgments on the narrowest grounds.'" (ultimately quoting *Marks v. United States*, 430 U.S. 188, 193 (1977))). We disagree for the following reasons.

¶ 38     First, we recognize that the Montana statute in *Egelhoff* differs from subsection (1) in a meaningful way. Subsection (1) contains an exception for specific intent crimes; the Montana statute categorically prohibited the use of voluntary intoxication as a defense in all cases. But the categorical exclusion in the Montana statute, which the United States Supreme Court found to be constitutional, is, for the purposes of this case, the same as the general rule of subsection (1) that "[i]ntoxication of the accused is not a defense to a criminal charge[,]" section 18-1-804(1), because Montana's statute and subsection (1) both bar the use of voluntary intoxication as a defense to general intent crimes.

¶ 39    Second, *Harlan* specifically and clearly limited its statement that subsection (1) was an evidentiary rule to specific intent offenses. The opinion states that, after introducing intoxication evidence to counter the prosecution's evidence that the defendant acted with specific intent, a defendant "nonetheless remains liable for a lesser included general intent offense . . . ." 8 P.3d at 471. In other words, while subsection (1) *might* create an evidentiary rule for specific intent offenses, our supreme court expressly made clear that it did not apply to general intent offenses.

¶ 40    Third, *Harlan*'s statement that subsection (1) is an evidentiary rule was not accompanied by a citation to *Egelhoff*, which had been decided about four years before *Harlan* was released, or to any other authority. As a result, we cannot read *Harlan* as even a tacit incorporation of the dissenters' reasoning in *Egelhoff*.

¶ 41    Fourth, our supreme court has pulled back from its statement in *Harlan* characterizing subsection (1) as an "evidentiary rule." In *Brown*, 239 P.3d at 769, the court did not describe subsection (1) as an evidentiary rule; it instead described it as a "partial defense."

¶ 42    Fifth, it was important to Justice Ginsburg that the Montana statute appeared among the statutes addressing general principles

16

of criminal liability, and not among statutes setting forth evidentiary rules. Subsection (1) does not appear in Title 13, Article 25 of Colorado's Revised Statutes containing evidentiary rules or in the Colorado Rules of Evidence, "the expected placement of a provision regulating solely the admissibility of evidence at trial." *Egelhoff*, 518 U.S. at 57 (Ginsburg, J, concurring in the judgment). Rather, its home is among the statutes that discuss general criminal liability. We find it in Article 1 of Title 18, which includes "Provisions Applicable to Offenses Generally." Part 8 of that article includes provisions that deal with "[r]esponsibility." As Justice Ginsburg observed, such placement reflects a legislative choice "regarding the circumstances under which individuals may be held criminally responsible for their actions." *Egelhoff*, 518 U.S. at 57 (Ginsburg, J., concurring in the judgment).

¶ 43 Sixth, subsection (1) does not lighten the prosecution's burden to prove the culpable mental state beyond a reasonable doubt. The prosecution still has to prove beyond a reasonable doubt that a defendant acted "knowingly," and "[t]he applicability of the reasonable-doubt standard . . . has always been dependent on how

17

a State defines the offense that is charged." *Id.* at 58 (quoting *Patterson v. New York*, 432 U.S. at 211 n.12).

¶ 44    Seventh, the legislature has "wide latitude" to redefine elements of criminal conduct, especially when determining "the extent to which moral culpability should be a prerequisite to conviction of a crime." *Id.* (quoting *Powell*, 392 U.S. at 545 (1968)(Black, J., concurring)). In Colorado, our legislature has determined that "[s]elf-induced intoxication . . . by its very nature involves a degree of moral culpability" and has therefore limited a defendant's ability to use it as a defense to general intent crimes. *Hendershott*, 653 P.2d at 396. By doing so, the legislature instructed courts trying cases involving general intent crimes "to treat a sober person and a voluntarily intoxicated person as equally responsible for conduct," thus "plac[ing] a voluntarily intoxicated person on a level with a sober person." *Egelhoff*, 518 U.S. at 59 (Ginsburg, J., concurring in the judgment). Subsection (1) is therefore "no less tenable under the Federal Constitution" than the Montana statute that the Supreme Court upheld in *Egelhoff*. *Id.* at 59-60.

¶ 45 Eighth, because our legislature has exercised its authority to define criminal conduct, "we inquire only whether the law 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* at 58 (quoting *Patterson*, 432 U.S. at 202). As the *Egelhoff* plurality pointed out, there is a "lengthy common-law tradition" of barring defendants from using voluntary intoxication as an excuse to a crime. *Id.* at 44-51 (opinion of Scalia, J.).

¶ 46 Last, if we were to declare subsection (1) unconstitutional for the reasons that defendant presses upon us, we would make the same mistake that Justice Ginsburg attributed to the Montana Supreme Court: not "undertak[ing] an analysis in line with the principle that legislative enactments plainly capable of a constitutional construction ordinarily should be given that construction." *Id.* at 60 (Ginsburg, J., concurring in the judgment).

III. As-Applied Challenge to the Voluntary Intoxication Statute

¶ 47 We now turn to the question of whether subsection (1) is unconstitutional as applied to defendant's case. We conclude that he did not preserve this issue in the trial court, so we will not address it.

19

¶ 48    Defendant asserts that he made the same claim in the trial court that he makes on appeal: Subsection (1) "could not be used to deprive him of his constitutional right to present a defense and to require the prosecution to prove, beyond a reasonable [doubt], all elements of the charged offense." True, defendant made this claim in the trial court, but it is the claim that we already addressed in Part II.

¶ 49    Defendant makes a different as-applied claim on appeal: subsection (1) is unconstitutional as applied because it allowed the prosecution to present evidence of his voluntary intoxication to prove his guilt, but it prohibited him from offering the same evidence to prove his innocence. We do not consider as-applied challenges that are not presented to the trial court, *People v. Thompson*, 2017 COA 56, ¶ 199, because "it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied," *People v. Veren*, 140 P.3d 131, 140 (Colo. App. 2005).

## IV. Voluntary Intoxication Instruction

¶ 50    Defendant contends that the trial court erred when it instructed the jury that voluntary intoxication was not a defense to any of the charged general intent crimes.  We disagree.

### A. Additional Facts

¶ 51    The prosecutor asked the trial court to instruct the jury that "intoxication is not a defense to any of the charges in this case" because the evidence had "raised the specter of intoxication in the jury's mind."  Defendant asserted that the instruction was inappropriate because he had not presented any evidence of intoxication and did not intend to argue intoxication in closing argument.

¶ 52    The prosecutor pointed to two pieces of evidence concerning defendant's intoxication that the jury had heard.  First, defense counsel had asked a witness about a "baggie," which, unbeknownst to the jury, contained methamphetamine residue.  Second, during cross-examination, a police officer testified that he had thought that defendant, at the time of his arrest, might have been "on something," so the officer asked the defendant whether he was "on something."

¶ 53    The trial court then instructed the jury that "[s]elf-induced intoxication is not a defense to any of the charges in this case."

### B.    Standard of Review

¶ 54    Trial courts have a duty to correctly instruct the jury on the applicable law. *People v. Garcia,* 28 P.3d 340, 343 (Colo. 2001). We review de novo whether jury instructions accurately reflect the law. *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011).

¶ 55    We also review de novo whether sufficient evidence supports a requested jury instruction. *People v. Rios*, 2014 COA 90, ¶ 42. "We view the evidence in the light most favorable to the giving of the instruction." *Id.*

### C.    Evidence for the Voluntary Intoxication Instruction

¶ 56    Defendant asserts that the voluntary intoxication instruction was not supported by sufficient evidence. We disagree.

¶ 57    We conclude that the following evidence supported an instruction that defendant's voluntary intoxication was not a defense to any of the charged crimes:

- One of the firefighters who picked defendant up on the morning of the crime stated that defendant was "very talkative, seemed like he had a lot of energy for [six]

22

o'clock in the morning . . . [and he was] moving kind of a lot."

- A police officer testified that he found a "baggie" on the ground outside of a vehicle defendant had stolen.

- One of the arresting officers testified that defendant was "hyperventilating," that his "[e]yes were rolled back in his head," and that he was "incoherent."

- The same officer later testified that someone asked defendant, "What are you on?" The officer clarified that the question was intended to determine "what type of narcotics [were] in [defendant's] system." The officer said that defendant's response to the question was "fear."

¶ 58    We are not otherwise persuaded by *Brown*, 239 P.3d at 769-70; *People v. Montez*, 197 Colo. 126, 128, 589 P.2d 1368, 1369 (1979); *People v. Lucero*, 623 P.2d 424, 428 (Colo. App. 1980); and *People v. Brionez*, 39 Colo. App. 396, 399, 570 P.2d 1296, 1299 (1979), on which defendant relies. These cases are distinguishable for the following reasons:

- In all four cases, the defendant requested the instruction, and the respective trial courts refused to give it.

- In *Brown,* 239 P.3d at 770, the supreme court concluded that there had been "insufficient evidence for a voluntary intoxication instruction to issue." Likewise, in *Lucero,* 623 P.2d at 428, the trial court refused to give the instruction because there was no evidence that the defendant was intoxicated during the commission of crime.

- *Montez,* 197 Colo. at 128, 589 P.2d at 1369, and *Brionez,* 39 Colo. App. at 399, 570 P.2d at 1299, involved a defendant's request for an affirmative defense instruction because voluntary intoxication was considered an affirmative defense at that time.

¶ 59     *People v. Quintana,* 996 P.2d 146, 148 (Colo. App. 1998), *disapproved of on other grounds by Harlan,* 8 P.3d 448, also supports our analysis. In *Quintana,* the defendant, who had been charged with both general and specific intent crimes, did not raise voluntary intoxication as a defense, but, based on evidence that the defendant had elicited, the trial court instructed the jury that intoxication was not a defense to general intent crimes. The defendant asserted that the court's instruction "interfered with his

24

tactical decision" to argue to the jury that he had not committed the acts with which he had been charged and that the instruction "misled" the jury into thinking that he had committed the acts. *Id.* The division concluded that the defendant's evidence had "created circumstances allowing the jury to infer that he was so intoxicated . . . [that] he lacked the ability to form specific intent . . . ." *Id.* As a result, "[t]he instruction . . . properly advised the jury regarding the legal effect of intoxication on the element of intent." *Id.*

¶ 60 Defendant unsuccessfully tries to distinguish *Quintana,* contending that "there was evidence of both consumption and intoxication" in that case, while there was no evidence of either in this case. We conclude, as we have pointed out above, that there was such evidence and that, viewing the instruction in the light most favorable to giving it, the evidence was sufficient. *See Rios,* ¶ 42.

### D. Impermissible Presumption of Guilt

We now turn to defendant's assertion that the instruction created an impermissible presumption that he possessed the requisite mental state. We disagree.

25

¶ 61 At the outset, defendant maintains that the instruction was erroneous because it did not appear in Colorado's Model Criminal Jury Instructions. COLJI-Crim. H:34 (2018) applies to "Intoxication (Voluntary)." The final sentence of the instruction reads, in part, that "you may not consider evidence of self-induced intoxication for purposes of deciding whether the prosecution has proved the elements of *[insert name(s) of general intent offense(s)]*." *Id.* Comment 8 states that the above sentence "curtails a jury's consideration of evidence of defendant's intoxication where the defendant is also charged with general intent crimes." *Id.* at cmt. 8.

¶ 62 Although the wording of Instruction H:34 and the instruction that the trial court read to the jury in this case differ, they mean much the same. Telling the jury that it could not consider evidence of voluntary intoxication for purposes of deciding whether the prosecution had proved the elements of the general intent offenses is much the same as telling the jury that voluntary intoxication is not a defense to such crimes.

¶ 63 And a trial court is not required to adhere to the pattern instructions for us to conclude that the court appropriately instructed the jury. *See People v. Flockhart*, 2013 CO 42, ¶ 12 ("The

26

pattern instructions are not law, not authoritative, and not binding on this court . . . .").  In this case, the instruction on voluntary intoxication essentially tracked the language of subsection (1), *People v. Galvan*, 2019 COA 68, ¶ 43 (*cert. granted* Jan. 13, 2020), and it was therefore a correct statement of the law, *Rios*, ¶ 46.

¶ 64     But, relying on a Missouri Supreme Court case, *State v. Erwin*, 848 S.W.2d 476 (Mo. 1993), defendant maintains that the instruction created an impermissible presumption that he possessed the requisite mental state.  In other words, defendant argues that the instruction told the jury that, if he were intoxicated, it should presume that the prosecution had proved that he had acted with the requisite culpable mental state.  We are not persuaded.

¶ 65     The instruction told the jury that it could not consider evidence of intoxication as a defense.  Indeed, the instruction made no reference to the mental state element at all.  The court instructed the jury on the culpable mental states of "knowingly" and "recklessly," and it told the jury that the prosecution had the burden to prove the mental state elements beyond a reasonable doubt.  In each of the elemental instructions, the jury was again

told that the prosecution had the burden of proving every element of the charged crime, including the culpable mental state, beyond a reasonable doubt. When we consider the jury instructions as a whole, we conclude that the court properly instructed the jury on the prosecution's burden to prove all the elements beyond a reasonable doubt. *See Kaufman v. People*, 202 P.3d 542, 549 (Colo. 2009).

¶ 66 Defendant also submits that the instruction given by the trial court was "a far cry from the instruction approved" in *People v. Vanrees*, 125 P.3d 403 (Colo. 2005). But *Vanrees* did not deal with voluntary intoxication; it dealt with whether a jury could consider evidence of the defendant's "mental slowness" when deciding whether he had acted with general intent. *Id.* at 404. The issue in that case was whether an instruction allowed the jury to consider such evidence. The supreme court did *not* address the issue of whether the instruction was proper as far as voluntary intoxication was concerned. We therefore conclude that *Vanrees* does not apply to our analysis.

¶ 67 The judgment is affirmed.

JUDGE TAUBMAN and JUDGE NAVARRO concur.